## Lehigh & Wilkes-Barre Coal Company's Assessment.

*Taxation—Assessment of coal lands—Practice, C. P.—Method of assessment—Superficial acreage—Foot acre.*

1. When an appeal from a tax assessment fixed by the board of revision is perfected in the court of common pleas, it is the duty of that court to hear and determine all of the questions raised just as if it were litigation between private parties. The court sits as a court, and is clothed with all the power of a court to hear and determine the issues involved, subject to the rules of practice and of law applicable to any other hearing of an analogous character.

2. In a county having more than one judge whether the hearing shall be before a single judge, or before two or more judges, is a matter of convenience and practice. It is customary for a single judge to hear the case in the first instance, state his findings of fact and conclusions of law, and make such decree as he may deem proper. When exceptions are filed it is the duty of the court in banc to sit in review, hear the arguments and enter such final decree as said court may deem equitable and just upon the record presented and evidence produced at the hearing.

3. A landowner cannot be deprived of his right under the act of 1889, to appeal from a tax assessment of his lands because the assessment and records in the office of the county commissioner may have been indifferently kept and irregular.

4. When an appeal is perfected in the common pleas the proceeding as to methods of procedure, proofs offered and admitted, findings of fact and conclusions of law is de novo.

5. The orderly method of procedure is to offer in evidence the assessment of record in the office of the county commissioners, as approved by the board of revision, together with such other books and data as may be on file relating to the valuation of the tracts of land in question. This makes out a prima facie case showing the validity of the assessment. The complaining real estate owner then has the laboring oar to show by the weight of the evidence that he has been aggrieved by the valuation so fixed.

6. The law requires that the valuation of a tract of land for the purpose of taxation shall be ascertained and determined upon the basis of market value, which means selling price at a bona fide sale after public notice. The practice is universal to use the acre as the unit of value in ascertaining the valuation of the whole tract, but this is the superficial, and not the foot acre. The conditions may be such that the foot acre method of ascertaining the value of the superficial acre may be properly adopted; but this method is exceptional and not of general application, and when applied to coal lands, the local conditions must be such as to give the whole coal area a present market value which can be ascertained upon some definite fixed basis.

7. Where an order of the court of common pleas on appeal from a tax settlement is reversed by the appellate court, it will be the duty of the court below, when the record is remitted, to determine whether the testimony already taken is sufficient to warrant such findings as may be necessary to make a just valuation in accordance with the opinion of the appellate court. If it be deemed sufficient, the court may make proper findings of fact and conclusions of law from it. If, however, it is not deemed sufficient, the case may be opened up and new testimony introduced, from which proper findings of fact and conclusions of law may be made.

Argued April 15, 1909. Appeal, No. 128, Jan. T., 1909, by Luzerne County, from order of C. P. Luzerne Co., Oct. T., 1907, No. 614, on appeal from tax assessment in reassessments of land of the Lehigh & Wilkes-Barre Coal Company. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Appeal from tax assessment.

From the record it appeared that on June 29, 1909, FULLER, J., began the hearing of testimony, and on January 28,

1909, filed various findings of fact and conclusions of law, and a form of decree fixing the valuation of the lands in question at $2,400 per superficial acre. Subsequently the county commissioners with leave of the trial judge, filed exceptions to the opinion and decree of the judge, and requested that the same be heard by the judges sitting in banc. On February 23, 1909, Lynch, P. J., filed an opinion concurred in by Halsey, J., refusing to consider the exceptions substantially on the ground that there had been no valid trial or proceeding by the board of revision, and that therefore there could be no valid appeal, and also that the trial had been held before one judge only, and was not in accordance with the proceeding authorized by the statute. Subsequently Ferris, J., and Fuller, J., filed opinions refusing to concur in the opinion filed by the president judge. On March 18, 1909, Fuller, J., filed the following order as the order of the court:

After further reflection and consideration of able briefs, pro and con, we stand by our former conclusion that the valuation of $2,400 per acre was a just and equitable result, regardless of any possible flaws in the reasoning by which that result was obtained; and we adhere thereto as our finding of fact in the case under all the evidence, hereby overruling all exceptions.

If there be any injustice, it falls not upon the county but upon the company, which, on legal ground, has been denied the benefit of any reduction below actual value, although most properties in the county enjoy some reduction, and if the general average ratio or reduction through the county could be legally applied to this particular property, the valuation of $2,400 would represent a mined value of $4,000, equivalent to a virgin value of $5,000. Bill sealed.

Other facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling various exceptions to the adjudication and the decree of the court.

*S. J. Strauss*, with him *Wm. C. Price* and *Edmund E. Jones*, for appellant, cited: Stevenson v. Coal Co., 203 Pa. 316; Steam Towboat Co. v. Starrs, 69 Pa. 36.

*A. H. McClintock* and *F. W. Wheaton*, with them *G. R. Bedford* and *A. L. Williams*, for appellee, cited: Searle v. R. R. Co., 33 Pa. 57.

OPINION BY MR. JUSTICE ELKIN, June 22, 1909:

After full consultation it has been determined that the record in this case shall be remitted to the court below for further consideration. When the appeal from the assessment fixed by the board of revision was perfected in the court of common pleas, it was the duty of that court to hear and determine all of the questions raised just as if it were litigation between private parties. The suggestion made that in a proceeding under the act of 1889 on appeal the judge, or judges, sit as county commissioners, or as a board of revision, is without merit. The court sits as a court and is clothed with all the powers of a court to hear and determine the issues involved, subject to the rules of practice and of law applicable to any other hearing of an analogous character. In a county having more than one judge whether the hearing shall be before a single judge, or before two or more judges, is a matter of convenience and practice. It is customary for a single judge to hear the case in the first instance, state his findings of fact and conclusions of law, and make such decree as he may deem proper. When exceptions are filed it is the duty of the court in banc to sit in review, hear the arguments and enter such final decree as said court may deem equitable and just upon the record presented and evidence produced at the hearing. This was not done in the present proceeding, and the learned court below committed clear error in refusing to do so. In some of our recent cases it has been pointed out that a record such as is here presented will be remitted in order that the court below may do its full duty in the consideration of the case. The position taken by the learned court below, sitting in banc, that the assessment and records in the office of the county commissioners are so irregular that an appeal would not lie is not tenable. Whatever the records may be, if no appeal had been taken, they would have been the basis for the tax levy, and the coal lands in question would have been

assessed upon the valuation thus fixed. The act of 1889 gave to an owner of real estate who may feel aggrieved by the valuation of his property, the right to appeal from the decision of the county commissioners, or board of revision, to the court of common pleas of the proper county. The taxpayer must of necessity accept the record as he finds it, but his right of appeal under the law, cannot be denied him, because perchance the records of his assessment may have been indifferently kept. We therefore hold that the appeal in this proceeding was properly taken and that it was the duty of the court below to hear and determine the questions raised. The learned judge who did sit acted clearly within the line of his judicial duty in every step taken, and while we cannot concur in all of his rulings, and in some of his conclusions, the record shows that he gave intelligent and exhaustive consideration to the many vexatious questions presented for his determination.

Appellant invokes the presumption that public officers do their duty in aid of the contention that the proofs produced at the hearing are insufficient to warrant the court in finding as a fact that the valuation was too high and to sustain a decree reducing the same. The point is technical, and under the established facts without substantial merit. When the appeal was perfected in the court of common pleas as required by the statute, the proceeding as to methods of procedure, proofs offered and admitted, findings of fact and conclusions of law, was de novo. The orderly method of procedure is to offer in evidence the assessment of record in the office of the county commissioners, as approved by the board of revision, together with such other books and data as may be on file relating to the valuation of the tract or tracts of land in question. This makes out a prima facie case showing the validity of the assessment. The complaining real estate owner then has the laboring oar to show by the weight of the evidence that he has been aggrieved by the valuation so fixed. In the present proceeding it is not a question of the sufficiency of the evidence, but of the weight of it, about which there is but little if any doubt. It was sufficient to overcome the prima facie case in favor of the assessment made by the taxing authorities.

Appellant also complains that the judge who heard the case refused to adopt what is called the foot acre method of ascertaining the assessable value of these coal lands. The law requires that the valuation of a tract of land for the purpose of taxation shall be ascertained and determined upon the basis of market value, which means selling price at a bona fide sale after public notice. The practice is universal to use the acre as the unit of value in ascertaining the valuation of the whole tract, but this is the superficial and not the foot acre. The value of the superficial acre is the fact to be ascertained and determined, and any just basis of arriving at a correct valuation of the superficial acre may be considered. The conditions may be such that the foot acre method of ascertaining the value of the superficial acre may very properly be adopted. In a similar case which came into this court on appeal from Lackawanna county, not yet reported, the foot acre basis was used with the consent and approval of counsel on both sides as well as of the court. It was apparent in that case that all of the interested parties considered the foot acre an equitable basis for ascertaining the value of the superficial acre. On appeal this court held that inasmuch as the parties had agreed upon this basis of valuation and the hearing had been conducted upon this theory, the method adopted should have been followed. It was treated as a means to an end, the end being to ascertain the proper valuation of a superficial acre as the unit of value to be applied to each separate tract or to the several tracts under consideration. This court did not say it was the only basis, or the best basis, or in every case even a fair basis, for ascertaining a just valuation for taxable purposes. Indeed, it is apparent, that in many instances such a basis would work hardship and do injustice. This would be especially true, if applied to the bituminous coal fields, where in the lower productive measures there are five different veins of coal. Some of these veins have great commercial value, others very little, and others are practically worthless for any present use. In most instances one vein only is being worked, and it scarcely ever happens that more than two of these veins are considered available for mining

purposes. The coal in some veins is of good quality, in others of inferior grade, and in others so full of impurities as to have no market value. Some of this coal is now accessible for commercial purposes, but vast areas will not be accessible for many years to come and some of it never will be available for any use. Under such conditions the foot acre basis of ascertaining value would be inequitable, unjust and unwarranted by practical business experience. It may be stated as a general rule that the foot acre basis of ascertaining assessable value is exceptional, not of general application, and when applied to coal lands, the local conditions must be such as to give the whole coal area a present market value which can be ascertained upon some definite fixed basis. We cannot agree with the position of appellant that it was the duty of the court below to adopt the foot acre method of ascertaining the value of coal lands for taxable purposes. While this basis might be used if the conditions warranted its adoption, it was within the power of the court to determine the value upon other bases and from testimony of a different character. The fact to be determined is the assessable value of the lands under consideration, and the courts must determine this question from the best testimony available.

When the record is remitted, it will be for the learned judge who heard the case to determine whether the testimony already taken is sufficient to warrant such findings as may be necessary to make a just valuation of the coal lands in question in accordance with the views expressed in this opinion.

If it be deemed sufficient, his findings of fact and conclusions of law may be adopted, modified or changed in accordance with the views herein expressed. If the testimony already taken be deemed insufficient for this purpose. the case can be opened up and new testimony introduced. When this is done, exceptions can be filed and it will then be the duty of the court in banc to pass upon the exceptions and make such order or decree as may seem equitable and just.

Decree reversed and record remitted with instructions to proceed as hereinbefore indicated. Costs of appeal to this court to be paid by appellee.