# The Lehigh Valley Coal Co., Appellant, *v.* Northumberland Co. Commissioners.

*Taxation — Valuation — Appeals—Practice, C. P.—Evidence— Proper method of fixing value—Reversal.*

1. Where appeals are taken to the Court of Common Pleas from decisions of county commissioners fixing the valuations of tracts of land for purposes of taxation, the proceedings are de novo and the facts must be found and the law applied just the same as if the litigation was between private parties.   The judge who hears the case, sitting as a chancellor, is clothed with the powers of a court to hear and determine the issues involved, subject to the rules of practice and of law applicable to other hearings of an analogous character.

2. The method of procedure in such case is for the taxing authorities to make out a prima facia case by the introduction in evidence of the assessment of record in the office of the county commissioners as approved by the board of revision, together with such other books and data as may be on file relating to the valuation of the tracts of land in question.   If the evidence shows that the board of revision acted arbitrarily, or without sufficient reliable information or evidence, or without a substantial basis to justify their decision, the prima facia case will be rebutted and should be so treated by the chancellor, whose duty it is to determine the

questions in controversy in the light of the evidence offered and admitted at the hearing.

3. The weight of the evidence should be decisive with the court and the burden is always on the litigants to introduce the evidence relied on to support their respective contentions.

4. It is not for the court to fix the valuation of a tract of land at what he, as an individual might think it worth, and where from an inspection of the record it appeared that the court had fixed valuations without regard to the evidence submitted, the judgment was reversed, and the case sent back for a valuation based upon the evidence.

Argued May 12, 1915.    Appeals, Nos. 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, January T., 1915, by the Lehigh Valley Coal Company, from decrees of C. P. Northumberland Co., September T., 1913, Nos. 226, 235, 234, 240, 239, 241, 238, 236, 229, 228, 230, 231, 232, 237, 242, 233, fixing the valuation of coal lands, in case of the Lehigh Valley Coal Company v. Commissioners of Northumberland County.    Before BROWN, C. J., MESTREZAT, ELKIN, MOSCHZISKER and FRAZER, JJ.    Reversed.

Appeals from decisions of the county commissioners sitting as a board of revision of taxes.

The opinion of CUMMINGS, P. J., and MOSER, J., was in part as follows:

There has been considerable difficulty with the assessment of coal lands for the purpose of taxation in this county for a number of years.    Prompted by a controversy over the valuations fixed by the taxing authorities for the triennial assessment of 1907, the court, by agreement of the parties, appointed two mining engineers and a business man, afterwards known as the "Coal Tax Commission," to take testimony, make investigations and gather data so that the court might act more intelligently upon the valuations then appealed from.    The commission made a protracted investigation, at a very heavy expense to the county and filed an elaborate report re-

viewing their work and methods, discussing the law as
they understood it, and setting forth a detailed statement
showing the valuations arrived at by the commission on
nearly every tract of coal land in the county with a short
description of the same.   The court, however, evidently
concluded that there was a lack of uniformity in the
valuations recommended by the commission and con-
siderable inequality in the valuation of tracts assessed to
the different coal companies in various parts of the field,
as indicated in the opinion filed by Judges SAVIDGE and
AUTEN to No. 337, December Term, 1907, in this court
and published in Mineral R. R. & Mining Co. v. Northum-
berland County Com'rs, 229 Pa., at pages 437 to 448.
They refused to adopt the valuations recommended by
the commission in many instances and fixed other and
different amounts on numerous tracts in various locali-
ties upon consideration of the report filed.

The Philadelphia and Reading Coal and Iron Company
and The Mineral Railroad and Mining Company, the
largest owners in the county, appealed from the valua-
tions thus fixed by the court to the Supreme Court.   The
said appeals were heard and dismissed by the appellate
court in opinions handed down January 3, 1911, re-
ported in 229 Pa. at pages 436, 457 and 460 respectively.
The lower court, as disclosed in the opinion above re-
ferred to, were evidently persuaded that partiality was
shown or rather that certain companies were discrimi-
nated against by the coal tax commission in different
sections of the county so that it not only refused to adopt
the valuations recommended by the commission as afore-
said in a number of instances, but commented in the
opinion upon the gross inequality of values placed upon
certain tracts not appealed.   To meet this exigency, the
court, on the last day that Judges SAVIDGE and AUTEN
held office, reduced the valuations placed upon the Min-
eral Railroad and Mining Company's properties in Mt.
Carmel Township.   This action was taken on or about
December 31, 1911, on the appeals pending from the 1910

triennial,—the opinion of the Supreme Court on the appeals of the 1907 triennial having been handed down on January 3, 1911, as aforesaid. The Philadelphia and Reading Coal and Iron Company soon afterwards and early in the year 1912, presented an agreement between that company and the county commissioners providing for a reduction in the valuations where appeals were pending by the company from the 1910 triennial assessment, contending that it was entitled to the same treatment as the mineral company. This was done soon after the present board of commissioners as well as the present court assumed office and before the officials were familiar with these recurring disputes over assessments and valuations for the purpose of taxation, and being recommended by the county solicitor, a decree was made in accordance with said agreement. The mineral company then complained of gross inequalities in the valuations placed upon its lands as compared with lands of like character of the Philadelphia and Reading Coal and Iron Company in Coal Township and insisted upon reductions accordingly in their pending appeals from the 1910 triennial. The court refused this request of the mineral company and dismissed the appeals. The mineral company again took the matter to the Supreme Court for review and the action of this court was sustained in a per curiam opinion reported in Mineral R. R. & Mining Co. v. Northumberland County Com'rs., 241 Pa. 339, at page 340. From this brief resumé of the events and transactions in recent years it can readily be seen that the assessment of coal lands in this county has given the authorities and parties interested considerable trouble and annoyance and has resulted in much difficulty and delay in the collection of taxes.

The appeals here being considered are from the valuations placed upon the various tracts of coal land and improvements situated in this county, by the county commissioners, sitting as a board of revision, for the 1913 triennial assessment. The coal properties in Northum-

berland County are owned by the Philadelphia and Reading Coal and Iron Company, the Mineral Railroad and Mining Company, the Lehigh Valley Coal Company and a few smaller companies and individuals. Nearly all of the valuations fixed by the county commissioners have been appealed from so that it becomes necessary for us to consider practically all of the coal tracts in the county.

There are no serious disputes as to the law or manner of assessment except that the appellants complain that the county commissioners raised the valuations in numerous instances without proper investigation and without the necessary information or data to warrant such action. The representatives of the appellants are now vigorously urging that the commissioners were not sufficiently informed and can show no adequate reason to justify their conduct in increasing the assessors' valuations of the different properties. The board of revision took considerable testimony at the time fixed for hearing appeals and secured the services of a mining engineer. They also retained Judge SAVIDGE as special counsel in the case, who is quite familiar with the entire field and has considerable experience with assessments and the reviewing thereof in this county during recent years. They professed to have gone into the matter quite thoroughly, to have studied recent valuations closely and made the best investigation possible, in view of the fact that they were not permitted to go inside the mines. So that we think there is little merit in the contention that the increase in valuations was made by the commissioners without sufficient data or information on the subject.

It is our duty therefore to review the valuations fixed by the county commissioners, determining to the best of our ability, whether or not the same are fair, just and equitable, affording the uniformity and equality the law contemplates and requires and to readjust the same where in our opinion it is necessary and expedient. There was some testimony at the hearings, of the sales

of coal lands within the past few years in Schuylkill as well as this county.

The evidence as to the transactions in Schuylkill County was rather indefinite and pertained to tracts and interests so situated as to be of no value whatever to us in passing upon the appeals here being considered, the same being entirely too remote and dissimilar. The Dewart and Wilson tracts in this county, said to have changed hands a few years ago, is a comparatively small property situate at the southern extremity of the coal field and is a poor criterion to govern prices in the region generally. The price paid for the Cummings and Auten tracts, sold to the Greenough Red Ash Coal Company, also represented money given to settle a law suit, and was liberal because the workings and development in the mines of the purchaser were encroaching the boundaries of said tract so that the same could be mined and the coal removed through the purchaser's developed mine to advantage and with comparatively small expenditure. Taken as a whole, the testimony as to sales was very unsatisfactory and indefinite; much of it was hearsay and not really competent, so that it was of no practical value to the court in its effort to arrive at the fair market value of the tracts appealed as contemplated by the acts of assembly. We have endeavored to take a somewhat comprehensive survey of the entire situation. We procured a single map that contains all of the tracts of all of the owners of the county. On this map we set down upon each separate tract the amount per acre that was fixed as a valuation for taxing purposes at the different periodical assessments beginning with the coal tax commission values for the 1907 triennial. In the light of the testimony, maps and statements submitted together with all records, we reviewed, compared, adjusted and equalized until we arrived at what we believed to be substantially uniform comparative valuations throughout the county. In doing this it was necessary to make a number of changes from the valuations fixed by the board of

revision, many of which, however, were comparatively slight.   In our reflections we had in mind the law as laid down by Mr. Justice ELKIN in the case reported in 229 Pa. pp. 436 to 460, as to the proper method of valuing coal lands, whether virgin, or under development, as well as the improvements thereon, giving weight to the various elements, features and conditions there suggested to be taken into consideration.

In the case of the Lehigh Valley Coal Company we re- duced the Saylor or Heyleman tract by reason of the fact that there is a serious fire in the coal measures on said property.   We also reduced the valuation placed upon the one-half interest of the Lehigh Valley Coal Company in the lands of the Trevorton Estate in Zerbe Township so that the same might better conform to the valuation placed upon the half interest of the Reading company in the same tract which includes all of the improvements thereon; said improvements being owned exclusively by the Reading company.   The only reduction made in the lands of The Mineral Railroad and Mining Company was in the three acres of "mineral only" of the Samuel Clark tract in Coal Township which we think was valued out of all proportion to other properties of like character simi- larly situated.   We made a number of changes in the Philadelphia and Reading Coal and Iron Company lands. In Mt. Carmel Township we made slight reductions in the Mt. Carmel Coal and Iron Company tract, The Mt. Carmel Locust Mountain Coal Company tract and the McIntyre lands, endeavoring in this way to equalize the valuations and, as best we could to bring about the de- sired substantial equality.   In Coal and Zerbe Town- ships we reduced a number of the Reading tracts with the idea of bringing about a more comparative uniform- ity and because we think some of the valuations fixed by the commissioners on tracts situated along and near the outer limitations of the coal measures were not sustained by the testimony.   The Yoxtheimer, Zeigler and Zim- merman tracts in Zerbe Township are virgin territory in

a section where there has been no development so that the condition of the veins and elements that go to make up values are somewhat conjectural and we believe we have arrived at a fair valuation for present taxation. The Philadelphia and Reading—Fulton Coal Company lands in Coal Township were assessed separately and so valued by the commissioners; at the suggestion of the appellant we have combined these tracts and valued the Fulton Coal Company lands as a whole at practically the same average valuation that was fixed by the commissioners.

The Mineral Railroad and Mining Company and The Philadelphia and Reading Coal and Iron Company insist that we should be governed very largely in fixing these valuations upon the various tracts, by their expert engineers, contending that they are the only really competent witnesses sufficiently familiar with the facts and data to give testimony that can be relied upon; that the market values testified to by them should weigh heavily to control the court in arriving at fair and proper amounts. We have no doubt the taxables generally would be glad to place or at least suggest valuations for their respective properties for the purposes of taxation; we may not disregard the testimony of other witnesses and of the miners and coal-cutters called who did actual work in the seams and know the character and condition thereof intimately. Our effort was to give fair consideration to all of the testimony adduced as well as the maps and records submitted, taking into consideration the valuations fixed by former assessors, commissioners, the coal tax commission and the witnesses; bearing in mind the depreciation resulting from exhaustion as well as the enhancement resulting from the advance in the price of coal and the general advance in coal land values in recent years as testified by at least one of the experts. The testimony and correspondence produced by Mr. Leitzel, who was then the tax-clerk is quite conclusive that the owners of the William Green tract had ample notice of

the action of the county commissioners, sitting as a board of revision, so that the complaint that "the commissioners gave appellants no opportunity to appeal" is without merit. At any rate we have reviewed the commissioners' valuation placed upon said tract and think it compares favorably with the surrounding properties of like character and with coal land values in the county generally.

Other facts appear in the opinion of the Supreme Court.

The court made certain changes in the valuations of the board of revision. The Lehigh Valley Coal Company appealed.

*Error assigned* was the decree of the court.

*F. W. Wheaton,* with him *P. F. O'Neill,* for appellants.

*C. R. Savidge,* with him *J. H. McDevitt,* for appellee.

OPINION BY MR. JUSTICE ELKIN, July 3, 1915:

These appeals are from the decrees of the learned court below fixing the valuation of certain tracts of land for the purpose of taxation. The cases came into the Court of Common Pleas on appeals from the decision of the county commissioners sitting as a board of revision. In such cases when the appeals are perfected in the Court of Common Pleas the proceedings are then de novo and the facts must be found and the law applied just the same as if the litigation was between private parties: Delaware, Lackawanna & Western R. R. Co.'s Tax Assessment (No. 1), 224 Pa. 240; Lehigh and Wilkes-Barre Coal Co. v. Luzerne County, 225 Pa. 267. The judge who hears the case, sitting as a chancellor, is clothed with the powers of a court to hear and determine the issues involved, subject to the rules of practice and of law applicable to other hearings of an analogous character. The taxing authorities make out a prima facia

case by the introduction in evidence of the assessment of record in the office of the county commissioners, as approved by the board of revision, together with such other books and data as may be on file relating to the valuation of the tracts of land in question: Lehigh and Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272.   This method of procedure has been recognized and approved in all of the cases in which the question has been considered and must be accepted as final and authoritative.   It is based upon the presumption that public officials do their duty, and this presumption arises in matters relating to fixing the valuation of lands for the purpose of taxation just the same as in the performance of other official acts. However, it should always be borne in mind, that this is only a presumption which may always be rebutted by evidence showing that the official acts complained of were not in compliance with what the law requires in the performance of a particular official duty.   A prima facia case based upon such a presumption must be regarded in the same way.   If the evidence shows that the board of revision acted arbitrarily, or without sufficient reliable information and evidence, or without a substantial basis to justify their decision, a prima facia case based upon such a presumption is easily rebutted and should be so treated by the chancellor, whose duty it is to determine the questions in controversy in the light of the evidence offered and admitted at the hearing.   Tax assessment cases should be heard and decided just like any case of similar character brought before a judicial tribunal.   We make this observation because in tax cases brought before this court on review there seems to be a tendency to ignore or disregard the rules of procedure and to fix the valuation, not upon the weight of the evidence produced at the hearing, but rather upon the general information of court and counsel.   This is clearly an erroneous view of what the law requires.   The weight of the evidence should be decisive with the court, and the burden is always on the litigants to introduce the evi-

dence relied on to support their respective contentions. It is not for the court to fix the valuation of a tract of land at what he as an individual might think it is worth, but his conclusion should be based upon the evidence introduced by the parties. If the testimony be conflicting, as it always is in such cases, it is the duty of the court to consider the same and decide the issue involved having due regard to the weight of the evidence.

In the present case we are impressed with the view urged upon this court by learned counsel for appellants, that in fixing the valuations of the six tracts of land about which complaint is made the evidence as to values was disregarded. We, therefore, agree that the valuations of these six tracts should be reduced to the values testified to by the witnesses at the hearing. If the testimony as to the value of any particular tract of land is uncontradicted, and is worthy of belief, that valuation should be conclusive; if the testimony be conflicting the court must use its best judgment in determining from the weight of it what is a just valuation. Upon the record here presented we find it very difficult to formulate a decree fixing the valuation of each particular tract in controversy and have concluded to remit the record to the court below for the purpose of having final decrees entered there in accordance with the views herein expressed.

Decrees reversed and record remitted with direction to enter such final decrees in the court below as the uncontradicted evidence warrants, and in those cases in which the testimony may be in conflict, to enter such final decrees as are just and equitable based upon the weight of the evidence. Costs of these appeals to be paid by appellee.