## Prescott's Appeal.

*Taxation—Assessment—Coal lands—Appeals—Ownership.*

1. Where appellants, on an appeal from a tax settlement of coal lands, assert ownership in their petition, they cannot deny it on the hearing.

2. Where owners in their petition assert ownership, but at the hearing claim that the coal had been exhausted, their proof must be such as to overthrow the returned valuation by the assessor or board of revision.

3. All real estate should be assessed at its actual market value, but it must be assessed at a uniform standard of valuation throughout the district, even if that valuation is below market value.

4. Where grantors of land reserve for themselves a vein of coal below that being worked at the time of the grant, and subsequently such coal is assessed against them for taxes, they cannot thereafter, on a tax appeal, in the absence of conclusive evidence to the contrary, assert that no such coal existed.

5. On an appeal from tax assessment of several tracts of coal land, the appellant cannot successfully assert that certain of the tracts have in fact no existence, where it appears that a predecessor in title of the appellant gave the assessor a list including the tracts in controversy, and that thereafter such tracts were valued and assessed under the designations given to the assessor.

Appeal from triennial tax assessment. C. P. Jefferson Co., Aug. T., 1925, No. 17.

*M. M. Davis*, for appellants; *Raymond E. Brown*, for county.

CORBET, P. J., Nov. 27, 1925.—Appeal by "C. H. Prescott, one of the trustees for the C. H. Prescott Estate, for himself and other co-owners," from decisions of the county commissioners or board of revision and appeal, assess-

Prescott's Appeal.

ing or valuing their following real estate or taxable property in the Township of Winslow at the recent triennial assessment, to wit:

    Coal and oil, 72 acres, value.................................$360
    Coal, 25 acres, value........................................ 250
    Lower Vein Coal, 155 acres, value............................ 775
    Mineral, 120 acres, value.................................... 300
    Warrant 3854, coal, 32 acres, value.......................... 160
    Warrant 3851, coal, 32 acres, value.......................... 160
    Warrant 120, coal, 49¼ acres, value.......................... 246

It is only "any owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property," who "may appeal from the decision of the county commissioners or board of revision and appeal to the Court of Common Pleas of the county within which such property is situated:" Act of April 19, 1889, § 1, P. L. 37. Unless the appellants are owners, they are without interest and have no standing in court. And if they are owners of real estate or taxable property, then it should be valued and assessed and is subject to taxation. Unless they are owners, it is no concern of theirs what assessment or valuation has been placed on any given piece of property; they cannot be aggrieved thereby.

In the affidavit to the appeal it is said: "The appellant believes injustice has been done in the assessment of taxes against the plaintiff estate appealed from." This is an assertion of ownership, and appellants cannot be heard to both assert it on appeal and deny it on the hearing.

As to the first two pieces, it was shown they were contiguous and in reality formed one piece of 97 acres, so far as appellants' mineral interests were concerned, save that their interest in the 25-acre portion was mentioned as coal, while coal and oil is the property valued in the 72-acre piece.

Appellants offered proof that the merchantable coal in a vein which had been leased on the 97 acres mentioned was worked to exhaustion in February, 1923. It has been the practice in this county to accord a reduction in valuation as the coal has been removed, which is proper (State Line v. Sullivan R. R. Co.'s Taxation, 264 Pa. 489), but the appellants, upon whom the burden rests, have not entirely satisfied us there is not remaining in this land coal of present value which will become merchantable, although from a workable standpoint it may not be so regarded just now. At least appellants, by their appeal, assert an ownership in present coal and oil, and have not shown us any discrimination or inequality in the valuation of this in comparison with other similar property. The proof must be such as to overthrow the returned valuation by the assessor or board of revision: Thompson's Appeal, 271 Pa. 225; Kaemmerling's Appeal, 282 Pa. 78; Appeal of Pennsylvania Co., etc., 282 Pa. 69; Phila. & Reading C. & I. Co. v. Northumberland County Comm'rs, 229 Pa. 460. We are of opinion that if, by reason of the exhaustion of the merchantable coal referred to, the valuation be reduced one-half, the appellants will be accorded all or, perhaps, more than they have any just reason to expect.

It is true the rule for valuation of real property for taxation is to set it at a price or sum not less than it would bring at a bona fide public sale after due notice. Nevertheless, there is the further qualifying constitutional principle that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, which may require an adjustment to a value below actual value: D., L. & W. R. R. Co.'s Tax Assessment (No. 1), 224 Pa. 240; Lehigh & Wilkes-Barre Coal Co. v. Luzerne County,

225 Pa. 267; Lehigh & Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272; Mineral R. R. & M. Co. v. Northumberland County Comm'rs (No. 1), 229 Pa. 436; Lehigh Valley Coal Co. v. Northumberland County Comm'rs, 250 Pa. 515. In Lehigh & Wilkes-Barre Coal Co. v. Luzerne County, 225 Pa. 267, it is said: "Actual market value is the proper standard to ascertain assessable value, and the Acts of 1834 and 1842 fixed the standard of valuation for real estate at the price it would bring at a *bona fide* sale after public notice. In other words, market value at public sale is the proper basis of valuation for the purpose of taxation. This is still the law, but in practical application it is scarcely ever enforced. The framers of the Constitution, no doubt, had this thought in mind when the principle of uniformity was written into the fundamental law. All real estate should be assessed at its actual market value, but it must be assessed at a uniform standard of valuation throughout the district, even if that valuation is below market value."

The appellants, by their deed to Fred W. Burns, dated Jan. 28, 1921, incorporated this: "The grantors reserve for themselves, their successors, assigns and lessees, all the coal below the vein now being worked and open and known as the Lower Freeport Vein."

The coal thus severed and reserved by the grantors comprises the third item, "Lower Vein Coal, 155 acres (Burns), $775," above mentioned. In Berwind White Coal Mining Co. v. Clearfield County, 18 Pa. C. C. Reps. 545, it is said: "But where the owner has by agreement or conveyance severed the coal right from the surface, such coal right should be taxed even in the absence of proof of the existence of coal on the land. The mere severance is sufficient proof of its existence to justify its valuation and assessment." Applying that principle here, there is no occasion shown for disturbing the valuation made, for the only defensive matter tendered was that of the absence of conclusive evidence of the physical presence of coal underneath the vein open and being worked at the time appellants made their deed to Burns. Having reserved to themselves all the coal below, we are of opinion the appellants have no standing to gainsay its presence. If there is no coal, the valuation and assessment thereon will impose no personal obligation on appellants for the payment of the taxes, for which they might permit whatever is assessed to go to tax sale.

As to the fourth item—mineral, 120 acres, $300, and further identified by the association with it of the name of Brumbaugh—the appellants proved the drilling thereon with diamond drill of three test-holes with only some slight showing of coal, insufficient to indicate its presence in workable measure, and that the territory in the vicinity was faulty. But they gave no evidence that the valuation was out of line with the valuation of contiguous and surrounding property of the same kind and character. The valuation is only $2.50 per acre, and in connection with what was said in respect to freedom from personal liability and privilege of letting it go to tax sale if it be believed there is no coal there as to the last preceding item, we are of opinion, all the facts and circumstances being considered, no alteration should be made in the valuation placed on this piece.

As to the three remaining pieces, lack of knowledge of their location by the present C. H. Prescott, a party in interest, is interposed to impliedly cast doubt on the reality of their existence; but it appears that the agent of C. H. Prescott, the father and former owner, from a map he had in 1917, gave the assessor a listing of the lands, including the pieces mentioned, and that they have ever since been valued and assessed under the same designation, the warrant numbers in which they are severally located being given. It seems

to us a little well-directed effort would result in locating the pieces. At any rate, we feel bound to recognize their existence, that being an issue not coming before us on the appeal. If, however, the appellants regard that as mythical, they can let a tax sale eliminate them, so far as they are concerned. The burden was on the complaining owners to overcome the *prima facie* case made out by the county and to show by the weight of the evidence that they were aggrieved by the valuation so fixed: Washington County *v.* Marquis, 233 Pa. 552. We are of opinion they have not done this.

### Order.

And now, Nov. 27, 1925, after hearing and due consideration, the valuation and assessment on the first-mentioned piece is fixed at $180; that of the second piece at $125, and the appeal as to all the other pieces is dismissed. The record costs of the appeal and hearing to be paid by the appellants. In other respects each party shall pay its own costs.