## Du Bois's Appeal.

*Taxes—Assessment — Minerals — Forest reserves—Practice—Proof—Act of June 5, 1913.*

1. The Act of June 5, 1913, P. L. 405, providing for the assessment and taxation of surface set aside as a forest reserve, does not affect the mineral assessments or the method of proving the validity thereof or require greater proof to make out a *prima facie* case.

2. Where the validity of the assessment is questioned, a *prima facie* case is made out by the county by offering the assessment records approved by the board of revision, together with evidence of coal operations on the property and in the vicinity, the amount of the prior assessment, and any changes which would affect its value, especially where the general effect of the taxpayer's evidence is to corroborate the testimony on behalf of the county.

Proceedings to fix assessment of mineral lands. C. P. Clearfield Co., Dec. T., 1926, Nos. 237-245, inclusive.

*Pentz & Pentz*, for appellant; *A. M. Liveright*, for county.

CHASE, P. J., July 8, 1927.—These are nine appeals by John E. Du Bois, taken from tax assessments by the Tax Assessor of Sandy Township, each of those appeals relating to a different area of land in Sandy Township, and, on motion of Clearfield County, the nine appeals were consolidated and heard as one.

Prior to 1926, the lands in question were on the seated list, at which time they were transferred to the unseated lands because of certification from the Department of Forest and Waters that the lands were designated as an Auxiliary Forest Reserve. Prior to this transfer, due to the establishing of the auxiliary reserve, various warrants, or portions thereof, were assessed without any attempt to designate the assessment levied on the mineral rights and the assessment on the surface, but were assessed as a whole, but because of the provisions of the Act of June 5, 1913, P. L. 405, in regards to assessments of surface of auxiliary forest reserve land, it was necessary to separate the assessment levied on the minerals from the surface.

The assessment, prior to the separation, on the lands in question (see annual assessment Sandy Township for 1925, page 113) was $115,821. Under the present assessment, from which this appeal is taken, $44,620, or a reduction of $71,201 in the assessed valuation. The area of the land in controversy is 3600 acres, and the assessment, under the revision, on the surface is $1 per acre. Therefore, the natural conclusion follows that the assessor had assessed the surface of this land on an average of $20 plus an acre.

The appellant contends that the usual method of procedure to make out a *prima facie* case showing the validity of the assessments for mineral purposes does not apply in this case because of section 1 of the Act of June 5, 1913, P. L. 405. That portion of the act which has bearing upon this question raised reads as follows: "Provided, however, that if the said surface land be underlaid with coal, iron ore, oil, gas or other valuable minerals, said min-

erals may be separately assessed," or, in other words, the appellant contends that because of the aforesaid provision, the requirements, in order to create a *prima facie* case of the validity of the assessment, are greater than if this act had no application. It is apparent that this contention of the appellant cannot be sustained. The act in question is an act to provide for the assessment and taxation of the surface set aside as an auxiliary forest reserve, and it is not the purpose or the intention of the act to in any way affect the mineral assessments, and the provision on which the appellant relies is inserted for the purpose of protecting or rather to clearly leave the procedure of assessment as it existed prior to said act. This is indicated by the act, wherein it provides, following the afore-recited clauses: "The assessors in the several districts in which said lands are situated shall assess such lands in the manner now or hereafter provided for the assessment of real estate for the purposes of taxation as if they had not been set apart as an auxiliary forest reserve," etc. Therefore, in determining the fairness of the assessment involved in these appeals, the general principles recognized should be applied.

The county offered in evidence the assessment records in the county commissioners' office as approved by the board of revision, together with the evidence of the assessor that there is a coal mine opened on a portion of the land in question; also evidence of coal being on all sides of the land, together with the evidence of coal operations in the immediate vicinity. The undisputed testimony of the assessor was also to the effect that the previous assessments, which, as has heretofore been stated, was almost three times in excess of the present appealed assessment, it being kept in mind that there is no substantial change in the property which in any way would affect the assessment, was to the effect that the appellant and the assessor years before had gone over a map showing the lands in question in the appellant's office and that the appellant was satisfied with the assessment then made. This testimony made out a *prima facie* case of the validity of the assessment: Lehigh & Wilkes-Barre Coal Co. Assessment, 225 Pa. 272; Lehigh Valley Coal Co. v. Northumberland County Commissioners, 250 Pa. 515.

The county having made out a *prima facie* case, the burden is on the appellant to show by the weight of the evidence that he was aggrieved by the valuation so fixed: Washington County v. Marquis, 233 Pa. 552.

The appellant's testimony consists principally of engineers, whose testimony was to the effect that, although coal was operated in the vicinity of the lands in question, and there is a small area of the land in question where coal was opened and under operation, in their judgment, a great deal of the coal, or possibly all but about 150 acres, could not be successfully operated; that this was based upon their opinion from examination of the nature of the land and their knowledge of surrounding territory; however, that no drilling had been done or explorations to their knowledge. The testimony of the appellants also developed that the assessments made were about the average on minerals for holding purposes and that there was no market for the sale of minerals in the vicinity at this time. In passing, it may be noted that there has been no sale of coal as a body in the vicinity for years, and there was no way of determining what the coal rights under these lands would bring on the market, so that the assessment, of necessity, must depend upon the intrinsic value.

The sum and substance of the testimony of the appellant being in effect that a great portion of the coal was of such a character as would be unminable because of present conditions of the coal market and because of the

faulty conditions of the coal, but due to the fact that the land had not been explored, this testimony was of the opinion type.

The general effect of the appellant's witnesses' testimony is rather to corroborate the county as to coal being under the lands in question. As to the extent of merchantable coal or as to the coal of value, that is questionable and cannot be determined except by the proper exploration and investigation by way of drilling and prospecting. The method of determining the intrinsic value of the properties in question is the usual method applied in Clearfield County in determining what would be a fair assessment, and the only method known under the circumstances except by the method of drilling or prospecting, which would be so expensive as to be prohibitive on the part of the assessing powers.

A careful examination and consideration of all the testimony leads the court to the conclusion that the assessments as made were fair, just and equitable to the appellant; that the assessed valuation is not unreasonable and is fully justified; that the testimony of the appellant, as a whole, tends to strengthen the presumption of the fairness of the assessment rather than weaken or overthrow the *prima facie* case established. The court is fully convinced that the appellant has no reasons for complaint in this case, and that to do otherwise than dismiss the appeal would work an injustice.

Now, July 8, 1927, each of the appeals in the cases involved herein, being Nos. 237 to 245, inclusive, of December Term, 1926, are dismissed, at the costs of the appellant. Exceptions noted and bill sealed to the appellant.

From John M. Urey, Clearfield, Pa.