## Integrity Trust Company v. Fell et al.

*John J. McDevitt, Jr.*, for plaintiff.

*David J. Smyth*, city solicitor, and *Irvin A. Winegrad*, assistant city solicitor, for defendants.

BROWN, JR., J., August 26, 1932.—The board of revision of taxes assessed plaintiff's property at the corner of Hortter and Greene Streets, Philadelphia, for the year 1932 in the sum of $325,000. Plaintiff avers in its petition that the assessment is excessive, unjust and unequal, and prays that it be reduced. The defendant's answer denies that the assessment was unfair, excessive or unequal, and avers that it was just, fair and equal and made with due regard to the assessment and valuation of other real estate throughout the City of Philadelphia.

From the admissions in the pleadings and the testimony, I make the following

### Findings of fact

1. Plaintiff is the owner of premises at the corner of Hortter and Greene Streets, Philadelphia, which are more particularly described in plaintiff's petition.

2. Erected on the property is an eight-story apartment house of stone and brick, steel and reinforced concrete, known. as the Germantown Manor, with basement, sub-basement, back building, arranged in thirty-nine apartments, three rooms and bath, six rooms and three baths, making a total of 181 rooms, each apartment being equipped with all modern appliances,. including Frigidaire, and with two electric elevators, one used for service, oil burners, hot-water boilers, basement quarters, locker rooms, lobby, manager's office and four apartments.

3. The plan of the building, the way the apartments are laid out with very little lost space for halls and elevators, makes the building most desirable for an apartment house.

4. The building is in good condition.

5. The property is surrounded by desirable residences with exception of towards the east, where it overlooks a coal yard and the heating plant of the Germantown Steam Company, as well as the Chestnut Hill branch of the Pennsylvania Railroad, which is electrified.

6. The property was assessed at $325,000 for the year 1932.

7. The fair market value of the property at the time it was assessed for purposes of taxation for the year 1932 was $325,000.

## Discussion

The valuation of the assessors, approved by the board of revision of taxes, made "a prima facie case showing the validity of the assessment:" Lehigh & Wilkes-Barre Coal Company's Assessment, 225 Pa. 272, 276; Metropolitan Edison Company's Appeal, 307 Pa. 401, 404. As the city offered the record of the assessment in evidence but not the data upon which it was based, the plaintiff contends that the assessor was properly cross-examined to show this, citing Lehigh Valley Coal Co. *v.* Northumberland County Comm'rs, 250 Pa. 515, where it is stated, at pages 523 and 524, that "the taxing authorities make out a prima facie case by the introduction in evidence of the assessment . . . as approved by the board of revision, together with such other books and data as may be on file relating to the valuation of the tracts of land in question." Cross-examination seems proper when the witness who produces the record of the assessment was one of the assessors: Metropolitan Edison Company's Appeal, supra, page 404.

From the cross-examination of the assessor it appears that separate valuations were placed on the ground and on the building, and that these were, in part, fixed by and taken from the records of the board. "There may be an enumeration of the constituent parts of a single subject of taxation and a value placed on each. That is a common method of assessment and violates no right of the taxpayer. It has some advantages, in that it gives the taxable notice of how his assessment was made up. The integrity of the assessment is not affected by the enumeration of the elements entering into the aggregate of the valuation and the placing of a separate value on each:" Pittsburgh Terminal Coal Company's Appeal, 83 Pa. Superior Ct. 535, 537. The other assessor mentioned in the testimony was not called as a witness, and it is to be noted that plaintiff's petition named two other assessors as the ones who "assessed the said property for taxation for the year 1932," which averment was admitted in the answer. This appeal is from the action of the board in approving the assessment, and there is no testimony showing that anything which it did was done arbitrarily. "The public officials, upon whom has been imposed the duty of making the valuation, have reasonable discretion in adopting appropriate methods to perform the duties imposed upon them, and it will

be presumed that they acted legally: Pardee *v.* Schuylkill County, 276 Pa. 246:" Du Bois's Appeal, 293 Pa. 186, 191.

However, upon appeal, the court of common pleas must consider the case de novo and find the facts and apply the law: Lehigh & Wilkes-Barre Coal Company's Assessment, supra, p. 276; Lehigh Valley Coal Co. *v.* Northumberland County Comm'rs, supra, p. 523; Du Bois's Appeal, supra, p. 189, and "if the testimony offered [by the property owner] is sufficient, and the witnesses giving it are credible, the prima facie case, made out by the production of the assessment rolls, falls, and it becomes the duty of the court to revalue the property according to the market value shown:" Appeal of Pennsylvania Company for Insurances on Lives, etc., 282 Pa. 69, 73. The plaintiff called one fully qualified real estate expert, who placed a value on the property of $222,000. If this had not been "met by additional proof on behalf of the county, . . . the court should accept the uncontradicted evidence, and revise accordingly:" Kaemmerling's Appeal, 282 Pa. 78, 83; but the city called three real estate experts who valued the property at $328,000. Although admitting the qualifications of one of these experts, plaintiff contends that his lack of familiarity with properties in this section of the city weakened his testimony, but the two other experts called by the city were familiar with values and conditions of real estate in the neighborhood and were fully qualified to testify as to the value of plaintiff's property. "The standard of qualification of witnesses called to establish worth must not be so high as to exclude the only available testimony: White *v.* Western Allegheny R. R. Co., 222 Pa. 534. It is sufficient if they have such reasonable knowledge of the value of the land as could be expected in view of the circumstances of the particular case: Wissinger *v.* Valley Smokeless Coal Co., 271 Pa. 566; Lally *v.* Central Valley R. R. Co., 215 Pa. 436:" Appeal of Pennsylvania Company for Insurances on Lives, etc., supra, p. 75. Therefore, for the plaintiff there is the testimony of one and on behalf of the city of two experts qualified to express opinions upon the market value of real estate with the improvements thereon in the neighborhood of plaintiff's property.

"Ordinarily, by 'fair market value' is meant the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied:" Lehigh & Wilkes-Barre Coal Company's Assessment, 298 Pa. 294, 300. "The general rule in Pennsylvania is that market value means the price or value of an article established or shown by sales, public or private, in the way of ordinary business. As applied to the valuation of real estate in a proceeding like the one at bar, if the evidence shows recent bona fide sales of the tracts under consideration, or of tracts similarly situated in the neighborhood and of like quality, the general selling price thus established would be the market value within the meaning of the law, that is, if all the conditions are the same. But the market value of each tract necessarily depends very largely upon its particular location, improvements, quality, conditions and the environment peculiar to it. . . . Whenever it can be ascertained by sales of lands of like quality similarly situated, or by recent sales of the lands being assessed, the statutory rule contemplates this method of establishing market value. If, however, there were no sales from which the general selling price might be ascertained, the market value may be established by the testimony of persons acquainted with the property, and whose knowledge and experience qualify them to form an intelligent judgment as to its proper valuation:" Philadelphia & Reading Coal and Iron Co. *v.* Northumberland County Comm'rs, 229 Pa. 460, 466, 467; Appeal of Pennsylvania Company for Insurances on Lives, etc., supra, pages 74, 75. In the present case,

there was no testimony of recent sales of like properties, but these are not conclusive: Metropolitan Edison Company's Appeal, supra, p. 404; and although there was some testimony indicating that at the time the assessment was made, there was no market for apartment houses, the real estate experts, in forming their judgments, took into consideration the location of plaintiff's apartment house and surrounding neighborhood, its convenience to the center of the city, its construction, the plan of the building, the utilization of space, the way the apartments are laid out and the rental values thereof. These factors tend to affect the selling price, and, notwithstanding that economic conditions may have had "a depressing influence on market value in its true sense" (Lehigh & Wilkes-Barre Coal Company's Assessment, 298 Pa. 294, 302), almost all the apartments have been rented, and although the rents have been low, a net profit was made from its operation from March, 1931, to March, 1932. Such elements of value were taken into account by the witnesses who testified as to the weight to be given to them: Metropolitan Edison Company's Appeal, supra, pages 404, 405.

Although the testimony is conflicting, the weight of the evidence sustains the valuation fixed by the board. "In tax cases, like all others, courts must be guided by the evidence in determining what are proper valuations:" Kemble's Estate, 280 Pa. 441, 447; Kaemmerling's Appeal, supra, page 82; but they may not revise and raise but only confirm or reduce them: Drake v. Northampton County, 14 Dist. R. 688, 689; Com. v. Hanna, 17 Dist. R. 308, 311, 312. They do not sit as boards of revision but as courts to determine the issues involved: Lehigh & Wilkes-Barre Coal Company's Assessment, supra, p. 275, and no duty is cast upon the court itself to determine what prices properties would probably "bring at a fair public sale:" Metropolitan Edison Company's Appeal, supra, page 405. "The weight of the evidence should be decisive with the court, and the burden is always on the litigants to introduce the evidence relied on to support their respective contentions. It is not for the court to fix the valuation of a tract of land at what he as an individual might think it is worth, but his conclusion should be based upon the evidence introduced by the parties. If the testimony be conflicting, as it always is in such cases, it is the duty of the court to consider the same and decide the issue involved, having due regard to the weight of the evidence:" Lehigh Valley Coal Co. v. Northumberland County Comm'rs, supra, pages 524, 525.

Because the assessors valued the ground and building separately in determining the assessment, plaintiff attempted to show the value of the building, apart from the value of the land, by the testimony of a builder (who was not qualified to give an opinion as to the value of the property as a whole), but this was not permissible: Westmoreland Chemical and Color Co. v. Public Service Commission et al., 293 Pa. 326, 331, 332. The best evidence of market value "is the opinions of credible witnesses familiar with such value, as in the analogous case of property taken under the right of eminent domain, in which the owner's damages are estimated by the market value of the land taken as a whole, not by the actual or estimated value of its component parts:" Kemble's Estate, supra, p. 446. Plaintiff did offer testimony of a real estate expert, and although he separated the value of the ground from the value of the building, he valued the property as a whole, as did the experts called on behalf of the city. "When an appeal is taken from the decision of the board of revision and appealed to the court of common pleas, the question before the latter tribunal is not whether the value placed upon certain constituent elements properly entering into the value of the subject of taxation is just and equitable,

but whether the assessment of the subject as a whole is just and equitable:" Pittsburgh Terminal Coal Company's Appeal, supra, pages 537, 538.

If the property owner tenders promptly upon the determination of the appeal the amount properly owing by him, the penalty for nonpayment of the tax at the time it was due cannot be exacted by the city: Ferguson v. Pittsburgh, 159 Pa. 435.

I have, therefore, come to the following

### Conclusions of law

1. The fair market value of plaintiff's property at the time it was assessed for purpose of taxation for the year 1932 was $325,000.

2. The appraisement of plaintiff's property for the purposes of taxation for the year 1932 in the sum of $325,000 by the board of revision of taxes was fair, just and equitable.

3. The appeal should be dismissed and the assessment confirmed without penalty.

### Decree nisi

And now, to wit, August 26, 1932, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the appeal of the Integrity Trust Company, trustee, from the assessment of valuation for taxation of real estate at the corner of Hortter and Greene Streets, Philadelphia, made by the Board of Revision of Taxes of the City of Philadelphia, for the year 1932, be and the same is hereby dismissed, said assessment is confirmed and said Integrity Trust Company, trustee, shall promptly pay to the said city the amount of tax due thereon for 1932 without penalty.

The prothonotary will enter a decree nisi in the terms above set forth and will notify counsel thereof and of the filing of these findings and conclusions; and, further, that if exceptions are not filed thereto within ten days from the receipt of said notice, a decree absolute in the sense of the decree nisi will be entered.