## Liebman, Appellant, *v.* Board of Revision of Taxes et al.

Argued January 7, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Abraham L. Freedman,* with him *Bernard Eskin* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Joseph H. Lieberman,* Solicitor for Board of Revision of Taxes, with him *Frank F. Truscott,* City Solicitor, and *Michael D. Hayes,* Assistant City Solicitor, for appellees.

PER CURIAM, September 30, 1946:

Joseph B. Liebman appealed to the court of common pleas from the decision of the Board of Revision of Taxes

refusing to reduce the 1944 tax assessment upon the Crozer office building situate at 1420-22 Chestnut Street in the City of Philadelphia. The court below found as a fact that the actual market value was $831,000, the value originally placed upon the premises by the assessor, and dismissed the appeal.

At the hearing in the court below the City offered in evidence a copy of the taxpayers' application for reduction of the assessment, originally filed with the Board of Revision of Taxes, which disclosed that the assessor valued the property in the sum of $869,983, allocating to the ground $702,420, which was calculated at a base rate of $11,000 a front foot for Chestnut Street and $2,000 a front foot for Sansom Street, with due consideration for the depth of the lot; and the building, containing 93,611 square feet, at $1.79 a square foot, or $167,563.

The Court of Common Pleas No. 7 had at the time of this assessment fixed the assessment for the year 1943 at $831,170. Accordingly, the assessor reduced his value to $831,000. The record further disclosed that the ground values were uniform and comparable in this block.

Appellant called J. Solis-Cohen, Jr., a real estate expert, who testified that the fair market value of the property at the time the assessment was made was $400,000. In arriving at this valuation the witness took into consideration the sale of the property in December, 1942, for $310,000, the inability to produce sufficient income from rentals to meet operating expenses, evidenced by the $9,000 annual loss, and other sales of surrounding properties. He said that the building, since it could not be rented at a profit, had no market value. Frank W. Kidd, the City's real estate expert, placed the market value of the land at $736,000 and that of the building at $140,000. While the appellant's expert witness testified that the building had no market value, it was con-

ceded at the oral argument the building was kept insured for $300,000. He determined the land value on the square foot rule to be $70. The land contains 10,580 square feet.[1]

Appellant contends that the court below erred in finding that the market value of the property was $831,-000 because (1) the building was not operated at a profit, (2) the assessed valuation is far out of proportion to the amount received for the sale of the property in 1942, and (3) the City failed to adduce competent evidence of value.

Introduction of the assessment record was prima facie evidence of the validity of the assessment: *Lehigh V. Coal Co. v. Northumberland Co. Com'rs.*, 250 Pa. 515, 524, 95 A. 712, 714; *Lehigh & Wilkes-Barre Coal Co.'s Assmt.*, 225 Pa. 272, 276, 74 A. 65, 66. The inability to make a profit as well as the price obtained at a bona fide sale are factors to be considered by the court. They are not, however, controlling. With regard to the latter, the Act of June 27, 1939, P.L. 1199, section 13, 53 P.S. 4805.13, provides: "In determining the actual value of property, the price at which the same would separately bona fide sell shall be considered but shall not be controlling." Appellant's present objection is inconsistent with his failure to appeal the 1943 assessment.

The evidence regarding value being conflicting, the court below had the duty to determine the issue, having regard for the evidence. Review of the record reveals no abuse of discretion by the court below.

Judgment affirmed.

---

[1] "Q. . . . How did you arrive at a value of $70 a square foot? A. That checks out with my $16,000 a front foot base, including 100 foot depth and the back street and the plottage. Q. How did you arrive at the $16,000 per front foot? A. I figure that the land there is worth $11,000 a front foot for a hundred foot depth. I used the merge point in there because I used a $2,000 base for the rear street. On using the merge point I got 195 feet which is allocated to the front of the building, and 35 feet that is allocated to Sansom Street": Notes of testimony, p. 18-a.