# Eslen's Estate.

*Appeals—Jurisdictional amount—Superior Court—Supreme Court.*

Where an appeal is taken to the Supreme Court from a decree of the orphans' court disallowing two separate and distinct claims against an estate, one over $1,500, and one under $1,500, the Supreme Court will remit to the Superior Court the appeal from the disallowance of the smaller claim, but will review the larger claim.

*Decedents' estates—Claim for stock—Findings of fact—Evidence.*

Where a trustee in bankruptcy claims from the estate of a decedent a certain number of shares of stock of a corporation, evidenced by a duebill given by the decedent to the bankrupt four years before the former's death, a finding by the orphans' court that the stock had been sold by the bankrupt to the decedent, and that it really belonged to the legatee to whom it had been specifically bequeathed, will not be reversed, where it appears that the stock was in possession of decedent at the time of his death, that for four years the bankrupt had never claimed it or asserted any interest in the corporation, and the declarations of both decedent and the bankrupt showed that the stock had been sold to the decedent by the bankrupt.

Argued Jan. 16, 1905. Appeal, No. 182, Jan. T., 1904, by John Sparhawk, Jr., Trustee in Bankruptcy of Charles M. Stoever, trading as Charles M. Stoever & Co., from decree of O. C. Phila. Co., April T., 1903, No. 161, dismissing exceptions to adjudication in Estate of Joseph A. Eslen, deceased. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*Charles H. Edmunds,* for appellant: The decedent held the stock in trust for Stoever: Eshbach's Est., 197 Pa, 153; Smith's Est., 144 Pa. 428; Ryerson v. Boorman, 8 N. J. Eq. 701; Dickerson's App., 115 Pa. 198.

*Charles J. Sharkey* and *Henry J. Scott,* with them *F. Pierce Buckley,* for appellees.

OPINION BY MR. JUSTICE BROWN, March 20, 1905:

The appellant presented two separate and distinct claims against the estate of the deceased. Neither had any connection with or relation to the other. One was for $754.26, alleged to have been received by Eslen for Stoever, and not paid by the former to the latter. The other was for 125 shares of the capital stock of a certain corporation, for which a certificate had been issued to the deceased, but which the appellant, as trustee in bankruptcy for Stoever, claims belong to his estate. But one appeal was taken to this court to the disallowance of these two claims. The act creating the Superior Court, and regulating appeals to it, as amended by the Act of May 5, 1899, P. L. 248, provides that the appeal is to that court from the decree of the orphans' court on "any single claim" not greater than $1,500. There is no provision in the act for an appeal like this, where one of the single claims of the appellant is less than $1,500 and the other exceeds that sum. But we cannot assume jurisdiction on an appeal from the action of the court below on any single claim not greater than $1,500, because the act declares it must be to the Superior Court, and we, therefore, remit to that court the appeal from the disallowance of the claim of the appellant for $754.26.

A certificate dated January 8, 1898, was issued by the Penn Printing and Publishing Company to Joseph A. Eslen for 125 shares of its capital stock. Two days later the decedent executed a paper, of which the following is a copy:

                                        "Common Council,
                                            "PHILADELPHIA.

"Due Chas. M. Stoever on demand One hundred and twenty-five shares of stock in the Penn Printing and Publishing Company, Certificate No. 13 registered in name of
                                            "JOSEPH A. ESLEN.
    "Jan. 10th, 1898."

In a letter to May Gleckner, written about four years after the date of the foregoing paper, and proved as a codicil to his will, he wrote: "You are to have that 125 shares in Penn Co., that I bought from C. M. S. and this is to be your authority for it—the stock is in my iron proof in my room." After his

death the certificate for the stock was found in his iron box in his room.

The dispute over the ownership of the stock between the trustee in bankruptcy of Stoever and May Gleckner was purely one of fact, and was so disposed of by the adjudicating judge and the court in banc, in passing on the exceptions to the adjudication. Twenty-one errors are assigned relating to appellant's claim to the stock. The first nine relate to the rulings of the court in admitting and rejecting testimony. That which had been admitted under objection, and which was not proper for the court's consideration, was not regarded by the auditing judge in making up his findings, and he so distinctly states. Though the offers which are the subjects of the eighth and ninth assignments might have been allowed, their exclusion was not error; for, if they had been allowed, neither the answer expected by the appellant as to an alleged contract by the appellee to sell Levin the stock, if it should be awarded to her, nor what she might have said in reply to the question as to what effort she had made to produce a paper to which she had referred would have been material in determining the ownership of the stock. Of the remaining eleven assignments of error we do not feel called upon to say more than that in no one of them have we discovered reversible error.

We have reviewed all of the evidence submitted, and, in the light of those portions of it which we are not asked by any assignment of error to say were irrelevant, immaterial or incompetent, the adjudicating judge and the court could not fairly have arrived at any other conclusion than the one appealed from. As stated, the question of ownership was one of pure fact. The trustee of the bankrupt relied on the duebill in support of his claim to the stock, but it appeared that in the schedule of the bankrupt's assets this stock was not included. There was no evidence that Stoever had ever demanded it from Eslen, though the latter lived until March, 1902, more than four years after the date of the duebill. It does not appear that Stoever ever did anything indicating to the company that he regarded himself as one of its stockholders. The trustee in bankruptcy, although he had the duebill in his possession from September, 1900, never, so far as appears from

the evidence, demanded the stock from Eslen. The appellee—the legatee of it—testified that in the fall of 1899 or 1900 she heard the testator say to Stoever: "Charlie, I have every reason to be proud of the success of the Penn; we are doing very nicely;" and that Stoever looked over and said: "Well, I should not probably have sold my stock to you when I did; you might have given me a higher figure if I had held off a little while longer;" to which the testator replied: "Now I am going to try to negotiate with Mr. Levin, and buy his interest; then I will own the stock in its entirety, the plant in its entirety." This witness further testified that in the summer of 1898, the wife of Stoever, in his presence, asked the testator whether the company had been paying any dividends, and that Stoever turned to his wife and said: "Why do you ask, Mabel? I do not hold any stock in the Penn any more; I sold my stock to Joe." Still further this witness states that after the death of Eslen, when she informed Stoever that the stock which Eslen had purchased from him had been bequeathed to her, he said: "Well, so he ought; you have been faithful to him in working to his interest; so he ought to take care of you; he always said to me during his lifetime, if anything happened to him he would see that you were well taken care of." To the accountant, the sister of the deceased, Stoever said, according to her testimony, that the stock belonged to his daughter, Violet, and stated to her: "There was a duebill in existence for the stock, and it came into the hands of the trustee in bankruptcy through the perfidy of Mr. Greiner." With the certificate for the stock in the possession of the testator at the time of his death, and with the testimony just recited in support of his ownership of it, the court's decree that it passed to the appellee as his legatee is affirmed, and this appeal is dismissed at appellant's costs.