# Washington County *v.* Marquis, Appellant.

*Taxation—Assessment—Appeal—Evidence—Coal lands.*

1. On an appeal from a valuation of lands fixed by the board of revision for purposes of taxation, a prima facie case is made out by the county introducing in evidence the assessment books of record in the office of the county commissioners, as approved or corrected by the board of revision, together with other record data relating to the valuations appealed from. The burden is then on the complaining owner to overcome the prima facie case and to show by the weight of the evidence that he was aggrieved by the valuation so fixed.

2. Farm lands underlaid with veins of coal, unsevered and unproductive, are to be assessed for purposes of taxation at their market value, and in ascertaining the market value, the value of the veins of coal, although unsevered and unproductive, is to be considered by the assessor or other taxing authorities in arriving at a proper valuation for assessment purposes.

3. On an appeal from the court of common pleas sustaining a tax assessment made by the board of revision, findings of fact relating to valuations will not be disturbed by the appellate court except for manifest error.

4. On an appeal from a tax assessment of farm lands underlaid by coal, a witness may state any facts within his knowledge relating to the character of the underlying coal, but he cannot testify to the general reputation of such coal; nor is it reversible error to refuse an offer to prove the valuations of the same lands made at a former triennial assessment.

5. In the assessment of farm lands underlaid with coal, unsevered, there should be no separate assessment of coal as such, but a valuation should be placed upon the whole tract of land. In such cases the coal can only be considered as an element tending to appreciate the value of the land.

Argued Oct. 13, 1911. Appeal, No. 114, Oct. T., 1911, by defendant, from order of C. P. Washington Co., Aug. Term, 1910, No. 138, dismissing appeal from tax settlement in case of Washington County v. W. E. Marquis. Before FELL, C. J., BROWN, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from tax assessment. Before McILVAINE, P. J.

At the hearing the court under objection and exception overruled various offers to prove the general reputation in the locality as to the character, thickness, quality and value of the coal vein under the land assessed. [1–6]

The court entered a decree nisi sustaining the assessment.

The appellant filed various exceptions to the findings of fact. These exceptions were overruled. [7–12]

On exceptions to the conclusions of law of the adjudication McILVAINE, P. J., filed the following opinion:

Exception 1:

The court erred in holding that all property should be valued and assessed for taxation at its actual value, instead of holding that each separate farm of a taxpayer should be assessed at such price as the assessing officers, after due examination and consideration, shall believe it would sell for, if sold singly and separately at a bona fide sale after due public notice.

If the appellant's counsel have interpreted our adjudication to mean that we set up a different standard than that fixed by the act of assembly, then the court has been misunderstood. We hold that all real estate should be valued and assessed for taxation at its actual value (not a proportionate part of its value) and that the best evidence of the actual value of a piece of real estate is what it would sell for if sold singly and separately at a bona fide sale after public notice. This exception, with this explanation, is overruled. [13]

Exception 2:

The court erred in holding, under the constitutional requirement as to uniformity, that the equalization of the valuations of appellants' lands by the county commissioners, was not excessive nor erroneous, for that they did not equalize them at higher valuations than the valuations of lands underlaid with coal in the other parts of the county.

Under the Act of April 19, 1889, P. L. 37, this court in disposing of these appeals was in duty bound, in the language of the act, "to have due regard to the valuation and assessment made of other real estate in the county." The burden was on the appellants to show that their assessments were too high, measured by the way other owners of like property had been assessed. If they have been treated as well as other owners of like property through the county, then they have no just ground of complaint, for it would be an injustice to the others if we should destroy this equality of assessment by reducing that of the appellants and leave the others as they are. This exception is overruled. [14]

Exception 3:

The court erred in holding that the evidence offered by the appellants by the tables of aggregate assessments and of county indebtedness, was not to be considered as proper for the consideration of the county commissioners in making the valuations, in view of what improvements the county possesses for the county expenditures, without finding also that the improvements specified have not yet been paid for by the expenditures, the indebtedness for them being represented by bonds unpaid.

All we meant by what we said as to the matter referred to in this exception was that the county for the bonds it had issued had got value received. It is not true that the improvements specified in our adjudication, such as court house, bridges, Flinn roads, etc., have not yet been paid for. They have all been paid for, and that is the reason we owe the debt created by the bonds. This exception is overruled. [15]

Exception 4:

The court erred in holding that the several assessors, in making the valuations for assessment of appellants' property followed the proper method provided by law. This exception is overruled. [16]

Exception 5:

The court erred in not holding that the valuations made by the assessors of appellants' farms, were irregular in form and unauthorized by law, in that they valued and assessed the underlying coal, unsevered and unopened and undeveloped, and entirely unproductive, separately from the surface, and then added the valuation of the coal to the valuation of the surface, as though but one assessment had been made upon the land.

This is not what the assessors did. They valued each of the appellants' farms as a whole, but they took into consideration, as they were bound to in making that value, how much if any the presence of the coal in and under each of the farms of the appellants would add to the value of that farm,—just the same as the presence of a building on a farm would be considered as an element in estimating the value of the farm.

And right here, we may observe in conclusion, is found the only real point of contention in these appeals, as we view it. The appellants claim that as the Pittsburg or River vein of coal underlying their farms is unsevered and unproductive, it should not be taken into consideration by the assessors or board of revision in estimating the value of their farms, notwithstanding the same vein of coal in or under adjoining farms where severed should be assessed; or, in other words, that severed coal when in the hands of coal operators or persons who have purchased it as an investment, should be valued and taxed, but that when the coal is in and under a farm and not severed, it should not be taken into consideration in valuing the farm and be assessed. That is, that a farmer who holds his coal unsevered with a view of getting a higher price for it in the future, ought not to pay any tax upon it because it is unproductive, but that the coal in the hands of another

person if severed but held for future developments, ought to be taxed. This position we think is clearly untenable. It is true that where coal has not been severed, it cannot be taxed separate from the surface, but when the farm is taxed both the surface and the unsevered coal can be taken into consideration in fixing the value, and if the unsevered coal is just as valuable as the coal adjoining it which is severed, then the increase in value which would be caused in the farm, where the coal is unsevered by reason of its presence, ought to be taken into consideration in fixing the valuation for the taxation of that farm.

As was remarked in our adjudication, these sixty appellants combined together to take these appeals that the question to which I have just referred might be settled, and as the appellants may desire to have the higher court pass upon this question, we think it would be nothing but fair to the appellants to enter a final decree dismissing their appeal in one of the cases, and allow the making of a final decree in the others to be postponed until the higher court has passed upon the case that has been appealed, and if counsel for the plaintiff and defendants will agree and indicate to the court what case they desire to have appealed, a final decree in that case will be prepared. [17]

The court entered a final decree dismissing the appeal.

*Errors assigned* were (1–6) rulings on evidence as above; (7–12) in overruling exceptions to findings of fact; (13–17) in overruling exceptions to conclusions of law; (18) decree dismissing the appeal.

*Boyd Crumrine,* with him *Thos. H. Wilkinson* and *E. E. Crumrine,* for appellants.

*Isaac W. Baum,* for appellee.

OPINION BY MR. JUSTICE ELKIN, January 2, 1912:
This is a voluminous record and we have examined it

with care. There are twenty-one assignments of error covering many pages, but the legal questions involved are few and simple. To consider each assignment in detail would unnecessarily prolong the discussion without serving any useful purpose. While it is true when the case came into the court below on appeal from the valuation fixed by the board of revision, the proceeding was de novo, it is equally true that a prima facie case was made out by the county introducing in evidence the assessment books of record in the office of the county commissioners, as approved or corrected by the board of revision, together with other record data relating to the valuations appealed from. The burden was then on the complaining real estate owner to overcome this prima facie case and to show by the weight of the evidence that he was aggrieved by the valuations so fixed: Lehigh & Wilkes-Barre Coal Company's Assessment, 225 Pa. 272; Phila. & Reading Coal and Iron Company v. County Commissioners, 229 Pa. 460. The main contention of appellant is that inasmuch as the coal underlying the land in question was unsevered, unopened and unproductive, it should be considered, if at all, at no greater value than would be balanced by injuries to the remaining strata, if the coal were severed, mined and removed. The meaning of this proposition is not entirely clear, but as we gather from the printed argument the contention is that farm lands underlaid with veins of coal, unsevered and unproductive, should be assessed at their surface value for agricultural and other like purposes without adding anything, or at least only a nominal value for the underlying coal. We find no support for this theory either in the statutes, or in the decisions of the courts, or in reason. It is true, of course, that until the coal is severed by conveyance to another party, the owner of the soil is assessed with the value of the entire estate including the coal, but this does not mean that in determining the value of the estate in land the coal is to be considered of no value. All elements of value affecting the selling price of the tract as a whole,

including the incumbent and superincumbent strata, the improvements, location and availability for either agricultural or commercial uses, should be given due consideration by the taxing authorities in determining the assessable value. Where the coal is unsevered, the land is the subject of taxation as real estate, and its value is what the law contemplates shall be assessed. We fully agree that the only standard of valuation recognized by law in making assessments is market value as distinguished from actual value; or, more accurately expressed, actual value limited and defined by market value. This is clearly shown by the acts of 1841 and 1842, which require the valuation to be fixed upon the basis of selling price at a bona fide sale after due notice. Any element of value tending to affect selling price may be taken into consideration, by the assessor, or other taxing authorities, in arriving at a proper valuation for assessment purposes. If underlying the surface there is a seam of coal, and the coal has a market value, the value of the whole estate in the land is necessarily increased thereby. Why should not such an element of value be considered in fixing a valuation upon the whole tract? No good reason for eliminating such a material element of value has been given, and as we view it none can be suggested. The fact that a tract of land is underlaid with a valuable seam of coal having a market value would influence the mind of a probable purchaser, and we have frequently said that anything that would add value to a property in the mind of one contemplating a purchase should be considered. Dormant and inactive coal is not as valuable as coal located near open and producing mines. Then, again, the value of coal depends upon quality, quantity, thickness of seam, mining conditions, accessibility, transportation facilities, and many other like conditions. We have exhaustively examined this record with the aid of the argument in support of the contentions of appellant but have failed to discover that the learned court below disregarded any rule of law or any statutory requirement in arriving

at the proper valuation of the lands in question. The whole subject was considered with painstaking care and all elements of value, those that appreciate as well as those that depreciate, were given due consideration. Allowance was made because the coal was dormant and inactive, and in fixing the valuations due consideration was given to the fact that the coal was unsevered and unproductive. The real complaint here is that the valuations are too high, but these are questions of fact which we would not disturb except for manifest error. We find no such error, but on the other hand think the findings are amply sustained by the evidence. Some complaint is made about the exclusion of certain offers of evidence tending to prove the reputation of the underlying coal strata in the neighborhood where the lands are located. The learned court below ruled that any facts within the knowledge of the witness relating to the character of the coal were relevant and would be heard, but general reputation could not be proven. There was no error in this ruling. Complaint is also made that the appellant was not allowed to prove the valuations for the same lands at the triennial assessment in 1907 for the purpose of comparison. When the offer was made, it was objected to and the court sustained the objection. The valuation of the lands in 1907 was no proper measure of their value in 1910. The valuation in 1907 may have been too low and the lands may have appreciated in value during the succeeding years. The fact to be determined was their valuation in 1910, and what may have been done in previous years threw but little if any light upon this question. The offer was properly excluded. We agree with the learned counsel for appellant in the contention that in the assessment of farm land underlaid with coal, there should be no separate assessment of the coal as such, but a valuation should be placed upon the whole tract as land. In such cases the coal can only be considered as an element tending to appreciate the value of the land. We cannot agree, however, that the learned court below disregarded the rule in this re-

spect. In overruling appellant's fifth exception to the conclusions of law, the learned court distinctly says that the assessors did not make the assessment in this way. They valued each farm as a whole, and took into consideration to what extent if any the underlying coal appreciated the value of the farm. The court and the taxing authorities proceeded upon this basis and in this there was no error.

Decree affirmed at the cost of appellant.