# DuBois's Appeal.

*Taxation — Assessments — Land in auxiliary forest reserves — Land underlaid with coal — Evidence — Burden of proof — Prima facie case—Presumption—Appeals—Acts of June 5, 1913, P. L. 405; June 5, 1913, P. L. 426, and June 7, 1923, P. L. 498.*

1. In considering appeals from assessments for tax purposes, the court of common pleas should proceed de novo in determining the proper valuation to be made.

2. At the hearing, the presentation of the records showing the appraisement filed and approved by the board, establishes a prima facie case.

3. The fairness of the valuation is presumed, and the burden of proving the incorrectness of the conclusion reached is on appellants.

4. There is nothing in the Acts of June 5, 1913, P. L. 405, and June 5, 1913, P. L. 426, relating to the taxation of land known as auxiliary forest reserves, if underlaid with coal, which alters the long established rule as to the character and quantum of proof, when the valuation, for tax purposes, is attacked on appeal.

5. If, in such case, appellant produces testimony to show that there has been a failure to fix the total on the basis of the fair market value, the court is bound to make the necessary alterations to accord with the facts, but it is authorized to do so only when it appears that the sum named is excessive or has been arbitrarily determined.

6. The court will examine the best testimony available to determine the just valuation, but land is not to escape the burden of taxation because of difficulty in fixing the standard of measurement.

7. The final conclusion of the court of first instance as to the fairness of the appraisement, when it rests on competent evidence, will not be reversed unless manifest error appears.

8. A different rule is not required as to lands in auxiliary forest reserves underlaid with coal because the Act of June 5, 1913, P. L. 405, fixes the assessable value of the surface at not more than one dollar per acre unless the land is underlaid with mineral.

9. In assessing such lands, the tax officers may assume that they are underlaid with coal where such fact was conceded by the owner when earlier valuations were made, and attending circumstances show that the lands were of that character.

1928.]      .                Syllabus—Arguments.

10. The public officials have reasonable discretion in adopting appropriate methods of making the assessment, and it will be presumed that they acted legally.

*Taxation — Appraisements—Separate tracts—Consolidation for trial on appeal—Jurisdiction of appellate courts—Practice.*

11. Where separate tracts of land are separately appraised for tax purposes, the appeals may be consolidated for purposes of trial.

12. As a general rule the test of appellate jurisdiction in actions involving the validity of taxes or the liability for the payment thereof, is the amount of the taxes sought to be avoided, and not the value of the property upon which they are assessed.

13. Where an assessment is of contiguous tracts in the same township belonging to the same owner, and the appeals are consolidated and a single decree is entered by the common pleas, the amounts involved in such decree may be considered as one in determining the jurisdiction on appeal.

Argued April 9, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.      *

Appeals, Nos. 68-76, Jan. T., 1928, by John E. DuBois, from order of C. P. Clearfield Co., Dec. T., 1926, Nos. 237-245, dismissing appeals from tax settlements, in appeal of John E. DuBois, from assessments of lands in Sandy Township, set apart by the department of forest and water as an auxiliary forest reserve.   Affirmed.

Appeals from tax assessments.   Before CHASE, P. J. The opinion of the Supreme Court states the facts. Appeals dismissed.   John E. DuBois appealed.

*Error assigned* in each appeal, was order, quoting record.

*W. C. Pentz,* with him *John J. Pentz* and *Ross H. Pentz,* for appellant.—There is no presumption that there is any coal, iron ore, gas, oil, or other valuable minerals under lands placed in the forest reserve and the burden of proof is on the county commissioners.

An assessment of minerals, "without designating the kind or character thereof," is insufficient under the Act of June 5, 1913, P. L. 405: Pardee v. Schuylkill Co., 276 Pa. 246; Kemble's Est., 280 Pa. 441; Berwind White Coal Co. v. Clearfield Co., 18 Pa. C. C. R. 545.

Where there is no severance of any mineral from the surface by the owner, an assessment made by the assessor in his home, without examining the property, is void, particularly when the owner of the fee shows by competent engineers and other persons qualified to testify who have investigated the property, that the coal has no market value.

*A. M. Liveright,* for appellee.—Intrinsic value is the test in the absence of market value: Kemble's Est., 280 Pa. 441.

To uphold the contention of appellant would result in double exemption to him: Com. v. I. & C. Co., 129 Pa. 346; Com. v. Lowry-Rodgers Co., 279 Pa. 361; Com. v. Cover, 29 Pa. Superior Ct. 409; Mt. Oliver Boro. v. German Congregation, 51 Pa. Superior Ct. 343; Academy of Fine Arts v. Phila., 22 Pa. 496.

OPINION BY MR. JUSTICE SADLER, May 7, 1928:

DuBois, appellant, was the owner of certain properties in Sandy Township, Clearfield County, and applied to the department of forest and waters, under the provisions of the Act of June 5, 1913, P. L. 426, and the Administrative Code (June 7, 1923, P. L. 498), for admission of the same into the class of surface lands known as auxiliary forest reserves. On January 22, 1926, a proper certificate from the secretary was issued granting the request made, and the county commissioners were directed to reduce the assessment of the tracts in question. By a second Act of 1913 (June 5th, P. L. 405, section 1), it was provided that property so classified "shall be rated in value, for the purpose of taxation, not in excess of one ($1) dollar per acre, and shall con-

tinue to be so rated so long as the said land remains within the class designated as auxiliary forest reserves; provided, however, that if the said surface land be underlaid with coal, iron ore, oil, gas, or other valuable minerals, said minerals may be separately assessed. The assessors in the several districts in which such lands are situate shall assess such lands in the manner now or hereafter provided for the assessment of real estate for purposes of taxation, as if they had not been set apart as auxiliary forest reserves, and shall make their returns to the county commissioners in like manner as is now or hereafter may be provided by law, subject to exception, appeal, and final adjustment."

The lands of DuBois, covered by fourteen warrants, contained 7,818.2 acres, to a portion of which he had the surface rights only. Over a period of many years the property had been assessed as seated, and prior to the certification of the tracts as part of the auxiliary forest reserve, had been valued for taxation purposes at $115,-821. When advantage was taken by appellant of the Act of 1913, a new assessment of 3,600 acres, included in nine contiguous warrants, was made on the basis of one dollar per acre for the surface, as provided by the act, and the mineral rights involved were valued at $44,-620. In previous appraisements, with the concurrence of the owner, this acreage had been treated as coal bearing land. The board of revision approved the assessment as made, and an appeal was taken to the court of common pleas, which affirmed its action. We are now asked to review the order so entered.

It has frequently been held that in considering appeals from assessments for tax purposes the court of common pleas should proceed de novo in determining the proper valuation to be made: Lehigh & Wilkes-Barre Coal Co.'s Assessment, 225 Pa. 272; Lehigh Valley Coal Co. v. Northumberland Co. Comrs., 250 Pa. 515. At the hearing, the presentation of the records showing the appraisement filed, and approved by the

board, establishes a prima facie case: Pennsylvania Co. for Ins. on L. & G. Annuities, 282 Pa. 69. The fairness of the valuation is presumed, and the burden of proving the incorrectness of the conclusion reached is upon the appellant: Kaemmerling's App., 282 Pa. 78. The Act of 1913 expressly provides that the assessment of minerals thereunder shall be made and returned as has been the practice in the case of other real estate. We see nothing in this legislation to alter the long established rule as to the character and quantum of proof required, when the valuation is attacked on appeal.

If the appellant produces testimony to show that there has been a failure to fix the total on the basis of the fair market value, the court is bound to make the necessary alterations to accord with the facts, but it is authorized to do so only when it appears that the sum named is excessive or has been arbitrarily determined: Shannopin Coal Co. v. Greene Co., 280 Pa. 4. Consideration will be given by it to all matters which might affect a possible purchaser, and thus influence the market value: P. & R. C. & I. Co. v. Northumberland Co. Comrs., 229 Pa. 460; P. & R. C. & I. Co. v. Comrs., 250 Pa. 101; Reading Coal & Iron Co.'s Assessment, 290 Pa. 187. Basing its valuation ordinarily on the superficial acreage, as here (Lehigh & Wilkes-Barre Coal Co.'s Assessment, supra; State Line & S. R. R. Co.'s Taxation, 264 Pa. 489), it will examine the best testimony available to determine the just valuation (Kemble's Est., 280 Pa. 441), but land is not to escape the burden of taxation because of difficulty in fixing the standard of measurement: Thompson's App., 271 Pa. 225. The final conclusion of the court below, as to the fairness of the appraisement, when it rests on competent evidence, will not be reversed unless manifest error appears: Pennsylvania Coal Co.'s Assessment, 257 Pa. 320; Kaemmerling's App., supra; Washington Co. v. Marquis, 233 Pa. 552.

Appellant insists that a different rule of proof is required in the instant case since the Act of 1913 fixes

the assessable value of the surface at not more than one dollar per acre, unless it appears that the land is underlaid with minerals,—a word which is sufficiently comprehensive to cover coal: 40 C. J. 748,—and urges that the burden of proving its existence, in workable quantities, by affirmative evidence, rests upon the taxing authorities. It cannot be that the tax officers must make investigation by boring holes, or otherwise, and thus actually reveal the presence of merchantable coal before a reasonable assessment of the land as mineral can be justified, when the attending circumstances show the property to be of this character. Though the assessor himself did not make personal investigation on the land in the instant case, yet he was justified in determining that minerals were present, as had been conceded by the owner when earlier valuations were made. The public officials, upon whom has been imposed the duty of making the valuation, have reasonable discretion in adopting appropriate methods to perform the duties imposed upon them, and it will be presumed that they acted legally: Pardee v. Schuylkill Co., 276 Pa. 246.

On three sides of the property in question admittedly there was coal, and on the fourth the mineral rights had by conveyance been severed from the surface, and mining was taking place. It also appeared that on a portion of the land now included within the reserve, and here taxed, there was an open working. Upon proof of these facts and circumstances there was ample justification for finding that there were minerals under the lands which were included within the nine warrants involved in this proceeding. We can see no merit in the objection that the assessment is defective in failing to set forth the kind of mineral with which the land was underlaid. The evidence on both sides clearly indicated the presence of coal, and the land had been consentably assessed as containing it in previous years.

It is true that experts called by the defendant testified that there was no coal under the greater portion of the

land which could be profitably worked, or that it was
not minable in a commercial sense because of the pres-
ent condition of the market, or made difficult by reason
of faulty conditions of the strata. This was a matter
for consideration by the taxing authorities, but, in view
of the other testimony, did not furnish a sufficient ex-
cuse for excluding the tracts as mineral land: Wash-
ington Co. v. Marquis, supra. That this difficulty in
successfully removing the coal was in the mind of the
assessor, and those who subsequently adopted his fig-
ures, is apparent when it is noted that the average valu-
ation of the land was fixed at less than twenty dollars
per acre, though the experts for appellant testified that
the adjoining property, which was operated, was worth
from $250 to $300 an acre. Under the evidence offered,
the appraisement made by the assessor and approved by
the board of revision and the court cannot be said to be
excessive.

One other question requires consideration. The nine
tracts of land in question were separately appraised,
but, for purposes of trial, the nine appeals were con-
solidated,—a proper practice (Thompson's App., supra;
Shannopin Coal Co. v. Greene Co., supra; Pardee v.
Schuylkill Co., supra),—and, after final order, separate
writs of error sued out. It was suggested at argument
that, notwithstanding the combination of all the assess-
ments, totaling $44,620,—the amount certified by the
court below as involved,—the actual sum in controversy
in this proceeding was less than $2,500, in which case
the jurisdiction to review was in the Superior Court.
By the Act of June 26, 1901, P. L. 601, the right to
review tax assessments is given to either the tribunal
last named or the Supreme Court, dependent upon the
amount really in question, and if it clearly appeared
that the taxes collectible in any one year upon the lands
here valued would be less than $2,500, this court would
be without jurisdiction. It is not the amount of the
assessment which will control in determining the sum

in dispute. "As a general rule the test of appellate jurisdiction in actions involving the validity of taxes or liability for the payment thereof is the amount of the taxes sought to be avoided, and not the value of the property upon which they are assessed": 3 C. J. 427. It was stated, however, on argument of this case, that the amount of tax payable in one year would be in excess of $2,500, and, as nothing to the contrary appears in the record, we will assume this to be correct.

The annual levy upon each separate tract would undoubtedly be less than the jurisdictional amount, but the assessment here in controversy embraced land within the nine warrants forming one contiguous body, and the proceeding in the court below was conducted as if there was but one assessment of the entire land, though there were different appeals, as to the individual properties included in the whole, to the court below and also' here. "As a rule, where separate suits involve separate and distinct demands, or subject-matters entirely disconnected and independent, appellate jurisdiction cannot be aided by consolidation": 3 C. J. 413. Separate claims cannot be added in order to make up the jurisdictional amount (Jennings's Est., 195 Pa. 406; McGlinn's Est., 270 Pa. 373), and two distinct claims, against the same party, based on separate grounds, cannot be joined for this purpose: Eslen's Est., 211 Pa. 215. Judgments in separate cases by the same plaintiff, naming the same defendant, though tried together but not consolidated, cannot be added so as to fix the jurisdictional amount (McCosh v. Myers, 23 Pa. Superior Ct. 61), nor can there be a joint appeal if there be separate judgments, though the cases are tried together: Com. v. Schollenberger, 17 Pa. Superior Ct. 218.

"On the other hand, it has been held that where several suits by the same plaintiff against the same defendant are essentially one, and are thus properly consolidated, the aggregate amount of the claims may be taken as sufficient to confer appellate jurisdiction": 3 C. J.

194          DuBOIS'S APPEAL.

413; Baltimore, etc., R. Co. v. U. S., 220 U. S. 94. In the
present' case, the assessment was of contiguous tracts in
the same township, the appeals to the common pleas
were consolidated, and a single decree was entered, and
in determining the amount actually involved all may be
considered as one. Though the certificate of the court
as to value in this case, based on the total assessment,
must be disregarded, yet the total tax now collectible is
in excess of the jurisdictional amount, and therefore the
matter can be finally disposed of here.

The decree is affirmed in each case at the cost of ap-
pellant.