# Real Estate Trust Company's Appeal

*Frank B. Murdoch, Jr.,* for appellant; *J. Myron Shimer,* for respondents.

MacNEILLE, J., September 20, 1934.—This is an appeal of Real Estate Trust Company of Philadelphia from the action of the Board of Revision of Taxes in assessing the premises 1338-1348 Chestnut Street, in the eighth ward of the City and County of Philadelphia, for the year 1934, in the sum of $4,000,000.

Neither counsel for the appellant nor for the respondent has filed requests for findings of fact or conclusions of law. We will therefore dispose of this matter in our discussion.

## Discussion

The property is known as the Real Estate Trust Building and is located at the southeast corner of Broad and Chestnut Streets, in the City of Philadelphia. It has 125 feet on Chestnut Street and 119 feet on Broad Street, and is irregular in shape. A full description appears in the second paragraph of the appeal.

The improvement is built in several sections as an office building containing stores on Chestnut Street and a banking institution on Broad Street. The construction took place at various times between 1895 and 1927.

The appellant, in its petition, says that the assessment for 1934 is $4,000,000. This is slightly inaccurate, as the assessment seems to be $3,994,824.

Continuously from 1926 to 1932, the Board of Revision of Taxes fixed the value of the land at $3,000,000, but in 1933 it raised this value to $3,498,568, and in 1934 fixed it at $3,426,962.

In arriving at the value of the land, the assesors used a unit value for 1 front foot 100 feet in depth on Chestnut Street, inside ground, $18,000, and on Broad Street, $14,700, and for corner influence, the 50 feet at Broad and Chestnut Streets, fronting on Broad Street, it was valued at $27,500 a front foot.

The building improvements covering this ground have suffered considerable depreciation and obsolescence, arising from the erection of a number of new office buildings nearby. The gross revenue from the improvements decreased from $367,740 in 1927 to $205,258 in 1933.

The assessment for 1934 is made up of the value of the land, $3,426,962 and the value of the building, $567,862.

There is no dispute as to the fairness of the assessment of the building, all

witnesses having practically agreed that, by reason of obsolescence and the general condition of the building, its value is about what it was assessed at, and the assessors displayed their usual good judgment in making the reduction in the value of the building, which the testimony amply justifies.

With reference to the land, the assessors and the Board of Revision of Taxes fixed the value at $3,000,000 from 1926 to 1932, and there does not seem to be any substantial reason for increasing this assessment in 1933 and 1934, while the income of the property was decreasing and there were small decreases in the assessed value of other neighboring properties. The assessors and Board of Revision of Taxes are a highly skilled and specially trained body of men, who keep in constant touch with all sources of information that will enable them to reach a proper distribution of the tax burden, they have utilized their skill and knowledge in a fair and painstaking way at a time when their task is most difficult, and the fact that they assessed the land for at least 7 years for $3,000,000, along with the testimony that was produced at the trial, is sufficient to overcome the prima facie case established by the assessment and the testimony that was produced at the trial on behalf of the city.

An attempt to justify the increase is made on the ground that this property and the contiguous properties were revalued in accordance with the Hoffman Rule, which resulted in a higher value for this property, and also that the owner placed a higher value on the property in its annual statement than the assessed value.

The Hoffman Rule referred to, promulgated by Judge Murray Hoffman some fifty years ago and used generally by assessors, is based on the declaration that the front half of a lot 100 feet deep is worth two thirds of the value of the full lot. Based on this rule, tables were prepared by Henry Harman Neill, called the Hoffman-Neill Tables, which, taking 100 feet as a basis of depth, show value of lots of various depths. This table has also been extended to lots over 100 feet deep, the value increasing at a diminishing rate.

If all the lots were 100 feet deep, the unit used as a standard, the value of the lot 1 foot by 100 feet deep would be mathematically accurate in its results. However, when shorter or deeper lots must be compared there is an element of approximation in the calculations, but it is the best means available under the circumstances. However, where the lots are more than 100 feet deep, all calculations should be based on depths of at least 100 feet or more, as the depth is less of a factor after 100 feet deep than in shorter lots.

From the figures submitted it appears that the Wanamaker Building and the Land Title Building were both figured as fronting on Broad Street, to the full depth, which was 100 feet or over, and the Girard Trust Company Building was figured as fronting on Broad Street to a depth of 118 feet, but the Real Estate Trust Building was figured as fronting on Broad Street to a depth of 63 feet and on Chestnut Street for the balance of the easternmost 62 feet. If the Real Estate Trust land is refigured as fronting entirely on Broad Street to a depth of 125 feet, including the two 17½-foot strips and then deducting the value of the two 17½-foot strips recalculated (as the assessed value of this strip seems to be much lower), the value thus obtained for the whole land will be $3,033,405, after allowing 10 percent for plottage, as was done in the original calculation. Since, however, the Girard Trust Building was only figured to a depth of 118 feet as Broad Street frontage and 21 feet 11 inches on Chestnut Street, to make an accurate comparison with it we should also take the Real Estate Trust as Broad Street frontage to a depth of 118 feet, leaving as Chestnut Street frontage 7 feet and refiguring on that basis the value of this ground is $3,100,937, and even if we only calculated the Broad Street frontage to a

depth of 100 feet, leaving 25 feet on Chestnut Street, the value will only be $3,321,618.

The importance the arrangement of the subdivisions bears to the value is clearly indicated by the fact that the easternmost 25 feet on Chestnut Street figured as Chestnut street frontage has a value of $578,000, while when it is taken as the rear portion of the Broad Street frontage it has a value of only $301,278.

Moreover, the amount added per front foot for corner influence on the Real Estate Trust property is too high. $12,800 per front foot for 50 feet of frontage was added to the Real Estate Trust property, while to the Girard Trust and Wanamaker properties only $11,000 per front foot was added. To ascertain the value of corner influence undoubtedly is the most difficult task which confronts the assessor. Almost every city has its own method of determining this, and as long as the method is reasonable it is entirely within the discretion of the assessors: Pardee et al. v. Schuylkill County et al., 276 Pa. 246; Du-Bois' Appeal, 293 Pa. 186.

The Somers Rule for calculating corner influence is based on the increment of value of a corner plot of 100 feet by 100 feet, which depends upon the relative value of the intersecting streets. For instance, when the best street has a value of $1,000 and the side street of $800 per front foot, the increment is 36.2 percent, and when $1,000 it is 51 percent. A curve has been prepared showing the percent increase for various values of side streets, taking the main street unit value at $1,000.

The Lindsey-Bernard Rule used in Baltimore adds the value of the lot as an inside lot on the main street to the value of the lot on the side street.

In Milwaukee, corner influence is figured on a 40-foot frontage to the depth of the lot, not exceeding 100 feet, by adding 7 feet to the frontage and multiplying this by the main street unit value using the depth factor, and then adding the product of not more than one third nor less than one sixth of the side street full unit value times the side street frontage not exceeding 100 feet.

While the methods used vary, they have this factor in common—that the corner influence will vary always as the value of the side streets comprising it, and that logically should be so. It is therefore difficult to understand how an intersection of a $14,700 side of Broad Street with an $18,000 side of Chestnut Street can produce a higher corner value than a $16,000 side of Broad Street with a $20,000 side of Chestnut Street. If we increase the Chestnut Street frontage by the same percentage of the Broad Street frontage for corner value as exists on the north side of Chestnut Street, the corner unit value would be reduced to $24,500 instead of $27,500, thus resulting in a further reduction of $165,000 in the assessment.

Refiguring the Real Estate Trust property and the Girard Trust property, which is the only other building for which complete figures are available in the testimony, by the methods used in other cities as indicated above, while in some of them the values are much higher, when the results are reduced, the figures clearly indicate that an assessment of $3,000,000 for the land involved in this appeal is not out of line with the other assessments.

The court's attention was called to the fact that the plaintiff in the statement of its assets placed a value on this land and the improvements of $4,300,000. The plaintiff offered testimony in explanation of its statement, which clearly indicates that at the suggestion of the State Banking Department this valuation was placed upon the property for the moral effect which it hoped to achieve in an effort to avoid discouragement on the part of investors during the time of the great banking depression. We cannot endorse this

policy, yet we do not feel that this statement works an estoppel against the plaintiff in this appeal. Wherefore, we have felt it our obligation and duty to make a valuation of the property independently of this.

The value placed on this property by the appellant in December of 1933, while not conclusive, was competent evidence in this case: East Brandywine and Waynesburg R. R. Co. v. Ranck, 78 Pa. 454; Houston v. Western Washington R. R. Co., 204 Pa. 321; 22 C. J., 180, sec. 125e. If conditions were normal, the court would be inclined to give more weight to this statement, but when values are so difficult to determine as they are at present, it is safer to adopt the value which the assessors placed on this property from 1926 to 1932.

### Conclusions of law

1. The market value of the building on the appellant's property is $567,862, as it was assessed.

2. The market value of the land of the appellant's property for the taxable year 1934 was $3,000,000.

3. The total market value of the appellant's property for the taxable year of 1934 was $3,567,862.

### Decree nisi

And now, to wit, September 20, 1934, this appeal having come on to be heard, upon consideration of the evidence presented, it is ordered, adjudged, and decreed as follows:

1. That this appeal from the action of the Board of Revision of Taxes of Philadelphia in assessing and valuing appellant's property, 1338-1348 Chestnut Street, in the City of Philadelphia, Pa., at $3,994,824 for the purpose of taxation for the year 1934 is hereby sustained at the cost of the respondent.

2. That the assessment valuation of this property, 1338-1348 Chestnut Street, Philadelphia, Pa., for the purpose of taxation for the year 1934, is hereby made and adjudged to be the sum of $3,567,862.