## Schneller's Appeal

*Wm. H. Schneller*, for appellant.

*C. E. Arner*, for appellee.

HENNINGER, J., March 20, 1939.—The City Assessor of the City of Allentown, pursuant to the powers given

him by subsection (*a*), section 2506 of The Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198, in the fall of the year 1938, proceeded to investigate what houses in the city had been assessed at the 1936 triennial assessment as single dwellings, which were in fact apartment houses. Section 2506 reads as follows: "In the years between triennial assessments, the said assessor shall perform the following duties with reference to the assessment of property and other matters and subjects of taxation, namely: He shall,

"(*a*) Assess any property which has been omitted, and correct any errors of law, fact or judgment which may have been made in making the triennial assessment".

Appellants were affected as to these properties: No. 953 North Seventh Street, assessed at the triennial assessment at $2,600, increased in 1938 to $2,900, because of discovery of the fact that two families resided therein, and assessment appealed to no. 59, April term, 1939; no. 304 North Seventh Street, assessed at the triennial assessment at $5,200, increased in 1937 to $5,600 by reason of a new building and increased in 1938 to $6,200 because of existence of a store room and apartment, and appealed to no. 60, April term, 1939; no. 312 North Twelfth Street, assessed at the triennial assessment at $5,600 and increased in 1938 to $6,200 because of the existence of two apartments and appealed to no. 61, April term, 1939.

Most of our discussion relates to all three, so all will be discussed in one opinion, with separate orders in each case.

The city assessor stated under oath that he was not aware of the use of any of these buildings as apartments at the time of the triennial assessments, and that the cards from which he gathers the information from which the assessment is made shows that they were treated as single dwellings. We have, therefore, a mistake of fact in the triennial assessment as the basis for reassessment between triennial years. The fact that the information from which he learned of the existence of apartments had

been available in the records of the water department since before the time of the triennial assessment does not estop him from using it now, for he need not be a detective and inquire collaterally into the nature of buildings. Nor is he required to make a detailed inspection of buildings to determine whether they are what they appear to be, namely, single dwellings, or whether they are small apartment buildings. He had the right, therefore, to make use of this information whenever he found it.

If buildings having the appearance of single dwellings are really buildings housing two or three apartments, it is also a fair assumption that their value is correspondingly higher, because of additional facilities and investments and because of higher rental value. The difference in value, of course, varies with the extent of additional facilities and expenditures and the character of the same.

It does not follow, however, that use of a single dwelling by more than one family, without the addition of improvements to the building for their better accommodation as single units, adds anything to the value of a building, and that determines the appeal in no. 59, April term, 1939. In that case (no. 953 North Seventh Street) we accept the testimony of the owner and his agent that the rental is to one family, that the house is equipped to accommodate but one family and that he was not formerly aware of the presence of the other family and that no additional investment was made in the building over the requirements for a single dwelling. It is true that the tenant apparently installed an additional water outlet, but this alone could have added no great value to the property. There is, therefore, no error of law, fact, or judgment in relation to this property to justify a reassessment in the intertriennial year.

When we come to premises no. 304 North Seventh Street, there are two factors entering into the increase in assessment: (1) The store room on the first floor; and (2) an additional apartment on the second floor. As to the store room, the assessor testified that as far back as

he remembers, it was there and that it was surely there before the last triennial assessment. While the existence of apartments may not be apparent to the assessor, certainly he cannot say that the existence of a store front or store room was hidden from him. The assessor has failed to show any mistake of law, fact, or judgment which permitted him in an intertriennial year to reassess this property because of a condition or improvement so patent as a store front or store room.

As to the apartment in no. 304 North Seventh Street, the assessor states that his information cards showed no such improvement and, therefore, the property was assessed triennially as a single dwelling. The assessor, therefore, upon discovery of the additional improvements, and having assessed originally under a mistake of fact, was entitled to reassess.

The same is true of no. 312 North Twelfth Street. Instead of being a single dwelling, as it appeared to be from an outside inspection and from the information on the assessor's card, it was a three-apartment building, clearly more valuable than it appeared to be. The assessor was entitled to reassess because of the mistake of fact in the original assessment.

The property owners then sought to prove either that the assessment was improperly made or that assessments in the City of Allentown were uniformly at 60 percent of the public sale value. The assessor insisted that all properties were assessed at full public sale value. This made out for the city a prima facie case, showing the validity of the assessment: DuBois' Appeal, 293 Pa. 186; Metropolitan Edison Company's Appeal, 307 Pa. 401. The only evidence to the contrary was the admission on the part of the assessor, substantiated by the information cards in his office, that a record was there kept of replacement values and that in his opinion a percentage thereof, varying in different parts of the city from 40 percent to 80 percent, brought a figure which he considered to be the public sale value. In all the cases now under considera-

tion the figure used was 60 percent. Whether or not the assessor's theory is correct, if the final figure is in his opinion the actual public sale value of the property, we have the right to accept it: Metropolitan Edison Company's Appeal, supra; General Electric Co. v. City of Erie, 110 Pa. Superior Ct. 206. We do not have the situation in which the assessor uses some basis of valuation other than that prescribed in the act of assembly.

Appellants have failed to show that assessments in the City of Allentown are based upon 60 percent or any other percentage of public sale value rather than upon full fair public sale value. The testimony of the assessor was to the contrary and this was supported by the testimony of appellants' own witness, Earl Kester. The assessor did estimate that the cost of improving a building for use as apartments was $500 per apartment and that the increase in public sale value was $300 apiece, but he nowhere stated and there is no other proof thereof that, the fair public sale value having been found, any percentage of that was used as the assessment figure.

Cases like Erie City's Appeal, 320 Pa. 31, which demand that a percentage of fair public sale value be used as the assessment figure, do not apply, for in those cases the percentage is applied, not because that is the lawful basis of assessment, but to avoid partiality caused by lack of uniformity. In our case uniformity demands assessment at full fair public sale value.

None of these houses is assessed above full fair public sale value. Appellants' own experts testify that no. 304 North Seventh Street has a fair public sale value of $5,800 to $6,000 and that no. 312 North Twelfth Street has a value of from $7,500 to $7,600, or at least $1,300 in excess of the new assessment.

Appellants further contend that the reassessment is faulty in that the notice does not contain the amount of the triennial assessment as well as the new assessment as required by section 2518 of The Third Class City Law of 1931, supra. Appellant has cited no cases which hold

such defect to be fatal. If the contention were that, by reason of such omission, appellants failed to realize that an increase had been made and that, therefore, they had missed an opportunity to protect their rights, there might be merit in their contention. As it is, the notice has served its purpose, an appeal was taken within the time specified and appellants have not been prejudiced by the omission. See Hart's Appeal, 131 Pa. Superior Ct. 104, 107, on the waiver of proper notice.