## Lehigh Street Properties LLC v. Lehigh County Board of Assessment Appeals

---

40. *See* footnote 1 to the court's memorandum opinion filed simultaneously with this order.

C.P. of Lehigh County, No. 2012-C-4854

*Timothy J. Siegfried*, for petitioner.
*David Backenstoe*, for respondent.
*John E. Freund, III*, for intervenor.

VARRICCHIO, *J.*, Nov. 10, 2014—Lehigh Street Properties, LLC, petitioner, is appealing from a decision of the Lehigh County Board of Assessment Appeals, respondent, concerning a tax assessment of petitioner's property, located at 3401 Lehigh Street, Salisbury Township, Allentown, Lehigh County, Pennsylvania. Based on the evidence presented and the stipulation agreements, this court makes the following findings of fact and conclusions of law:

## FACTS

Petitioner owns the property located at 3401 Lehigh Street, Salisbury Township, Allentown, Lehigh County, Pennsylvania (the property). The property is approximately 3.794 acres and improved with a series of connected buildings having an aggregate square footage of 50,822.[1] Currently, the property is utilized for new and used franchised car sales, specifically: Audi, Mercedes,

---

1. This square footage, which was undisputed, includes both the improvements and the land. *See* notes of testimony, May 23, 2014, p. 229.

and Porsche.

In 2012, Lehigh County, by and through the Lehigh County Tax Assessment Office, reassessed all properties within Lehigh County.[2] The property was reassessed at $5,890,400, which broke down to $1,570,000 attributable to the land and $4,320,400 attributable to the value of the improvements to the land. On May 22, 2012, petitioner appealed to the Lehigh County Board of Assessment Appeals.

A hearing was held by the Lehigh County Board of Assessment Appeals on September 26, 2012 and, by written notice, petitioner was informed on October 18, 2012 that the reassessment of the property was still valued at $5,890,400.

On November 14, 2012 Petitioner filed the instant appeal. Petitioner asserts that respondent's valuation of the property was excessive, improper, unjust and contrary to law. Specifically, petitioner argues that respondent's decision is based, in whole or in part, upon an appraisal or information that does not represent the actual fair market value of the property. Petitioner also argues the assessment lacks uniformity with other comparable properties in the area.

## STANDARD OF REVIEW

In a real estate tax assessment appeal, the trial court has a duty to hear, without jury, a tax assessment appeal, to consider competent and credible evidence, and to make determination as to fair market value based upon the evidence presented. 72 P.S. § 5020-518.1. The matter before the trial court is heard *de novo*. *Green v. Schuylkill County Bd. of Assessment Appeals*, 772 A.2d 419 (Pa.

---

2. The parties have stipulated that only the 2013 and 2014 tax years are at issue in the instant appeal.

2001); 72 P.S. § 5020-518.1. In the *de novo* proceeding, the taxing authority first presents its assessment record into evidence, establishing a prima facie case for the validly of the assessment. *See Deitch Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 209 A.2d 397, 402 (Pa. 1965); *See also Koppel Steel Corporation v. Board of Assessment Appeals of Beaver County*, 849 A.2d 303 (Pa. Cmwlth. 2004). The burden then shifts to the taxpayer to present sufficient, competent, credible, and relevant evidence of the fair market value of the property to rebut the validity of the assessment. *See Kemble's Estate*, 124 A. 694, 696 (Pa. 1924); *See also Ritter's Appeal*, 24 A.2d 470 (Pa. 1942).

## DISCUSSION

In a tax assessment appeal, the trial court must make two determinations: (1) the fair market value of the property involved; and (2) the appropriate ratio of assessed value to market value of the property.[3] *Deitch Co. v. Board of Property Assessment*, 209 A.2d 397, 402 (1965). Then, the court must apply the ratio to the fair market value of the property in order to arrive at the proper assessment. *Id.* The fair market value is "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Buhl Foundation v. Board of Property Assessment*, 180 A.2d 900, 902 (1962).

When determining fair market value of a property, a court must consider three approaches, in conjunction with one another: the sales comparison approach; the income

---

3. In the present case, the parties stipulated that the applicable common level ratio is 100%, thus, a determination concerning the actual, or fair market value, of the property at present would also determine the assessed value.

approach; and the cost approach. *See Whitcomb v. City of Philadelphia*, 107 A. 765 (Pa. 1919); *See Brown v. Forest Water Co.*, 62 A. 1078 (Pa. 1906); *See also Appeals and Review of Allegheny County*, 519 A.2d 1080 (Pa. 1987).

First, the sales comparison approach compares the property to other "comparables" that have recently sold.[4] *See generally Grand Prix Harrisburg, LLC v. Dauphin County Bd. of Assessment*, 51 A.3d 275 (Pa. Cmwlth. 2012). Second, the income approach to property valuation takes into consideration how much income the property would produce if it were rented. The approach then determines, through a capitalization formula, what a prudent investor would typically pay for the property.[5] *Id.* Finally, the cost approach is based on the cost of replacing the property, less depreciation.[6] *Id.*; *See also McKnight Shopping Center, Inc. v. Board of Property Assessment*, 209 A.2d 389 (Pa. 1956).

In the present case, respondent offered the tax assessment records and the testimony of Francis Unger, Chief Assessor for Lehigh County, into evidence, thus making out a prima facie case to show the validity of the

---

4. Before any sales can be used in this approach it must be determined if they are "arm's length" or good, open market sales. As there may be outside factors that go into a sale price, the assessor must analyze each sale very carefully. Other important valuation considerations are location, size, condition, quality, and time of sale.

5. To make this calculation the assessor must consider many things including current market rents, insurance, maintenance costs, operating expenses, vacancy rates, and the expected rate of return on investment.

6. In order to calculate this valuation method, the assessor begins by estimating how much money it would take, with current costs of labor and material, to replace the property with one similar. In addition to the value of any improvements, the assessor must also separately estimate the value of the land as if it were vacant. Then, if the property is not new, the assessor must determine the amount your property has depreciated and adjust the assessment accordingly. Although all three approaches must be considered, they do not all have to be used in arriving at the final valuation of the property.

assessment. *Deitch Co. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 209 A.2d 397, 402 (Pa. 1965) ("In presenting his case, the taxpayer must first offer proof with respect to the actual or market value of the property"). "The complaining real estate owner then had the laboring oar to show by the weight of the evidence that it had been aggrieved by the valuation so fixed." *Buhl Foundation v. Board of Property Assessment*, 180 A.2d 900, 902 (1962) (citing *Washington County v. Marquis*, 82 A. 756 (Pa. 1912); *Hammermill Paper Co. v. City of Erie*, 92 A.2d 422 (Pa. 1952)).

Next, petitioner's expert, Frederick M. Lesavoy, MAI, SRA, prepared an appraisal report of the property's fair market value as of July 17, 2012, which was submitted into evidence. Lesavoy also testified. Additionally, Salisbury School District offered an expert report via Raymond C. Geiger, Jr., a Pennsylvania State Certified General Appraiser.

Each expert valued the property using similar methodology under a sales comparison approach, specifically: (1) unity of use; and (2) determining the value based upon a price per square foot of gross building area. However, the appraisals differed with respect to the properties considered to be comparable.

Lesavoy's three comparable properties were: (1) 2639 Bristol Pike, Bensalem, PA; (2) 140-160 Old York Road, Jenkintown, PA; and (3) 1015 Lancaster Avenue, Reading, PA. Lesavoy concluded, when adjusting for value of land and buildings/improvements, but considering the loss of franchise elements, a valuation of $3,086,000 for the property. Further, while Lesavoy considered an income approach and cost approach, he concluded both approaches to be unreliable and did not perform an analysis under either.

In contrast, Geiger choose four comparable properties, all car dealerships that were sold between February 2012 and the present. Specifically, the first property Geiger selected was a Subaru dealership located at 4611 Hamilton Boulevard, Allentown, PA and the property remained a Subaru dealership after it was sold. Geiger also indicated that this comparable property was most similar to the one at issue. Ultimately, Geiger determined a range of $104 to $153 per square foot for the four comparable properties he considered under the sales comparison approach, but Geiger judged the property at issue to be near the low end of the range, specifically he assessed the value to be $110 per square foot, due to the large number of improvements on the property.

Geiger also considered the income approach and the cost approach. Under the cost approach, he determined the "as if unimproved" land to be valued at $1,400,000 and Geiger used a Marshall-Swift Cost data to estimate the replacement cost for the property, concluding a valuation of $5,550,000. Last, Geiger performed an analysis under the income approach, which tested the validity of his valuations under the previous two approaches. Under the income approach, Geiger determined the property to be valued at $5,500,000.

The Commonwealth Court has held, to be sufficient, competent, credible, and relevant evidence, it is not enough for a taxpayer to merely present evidence from a qualified expert in order to meet his initial burden of overcoming the validity of the property tax assessment record. *Craftmaster Mfg., Inc. v. Bradford County Bd. of Assessment Appeals*, 903 A.2d 620, 627 (Pa. Cmwlth. 2006). The evidence must be sufficient to rebut the validity of the assessment, which means the evidence must be believed in the sense that the trial court accepts the veracity of the expert, for example,

based on his demeanor, and relevant and competent in the sense that it is not dubious, but legally and factually sound so that it is of practical value to the court in its effort to arrive at the fair market value. *Id.*

In the case at hand, this court finds Lesavoy's testimony was sufficient, competent, credible, and relevant to rebut the validity of the original assessment. Lesavoy's testimony was both legally and factually sound and of practical value to the court in its effort to arrive at the fair market value.

Lesavoy's valuation is only called into question in that Lesavoy's selected comparable properties and the property at issue differ greatly in both type and quality. For example, Lesavoy's first comparable property is actually a motorcycle dealership. While Mr. Lesavoy's appraisal report relies upon suspect comparable properties, it is still sufficient to rebut the implied value of $5,980,400. This court simply finds the comparables Geiger utilized in the sales comparison approach valuation to be most useful. Of particular import is the fact that Geiger determined a range of $104 to $153 per square foot for the four comparable properties he considered and he judged the property at issue to be near the low end of the range.

On the other hand, Lesavoy testimony was particularly useful in regard to rebutting the validity of the original assessment in that Lesavoy considered franchise improvements when choosing comparable properties. As he noted, franchise elements will not remain at the property; rather, upon relocation of the franchises, the property would need to be stripped of any franchise design elements, colors, architecture and materials. While the cost to remove franchise design elements from the property, in the opinion of the petitioner, is in excess of $600,000, currently petitioner has no intention to sell the

property.

Additionally, Lesavoy supplied evidence that the usability of the property, by itself, for vehicle sales is substantially limited without use of or access to adjacent properties because, although permitted to co-exist on the property now, each franchise would not permit its franchise to stay at the property if a sale were to occur and none of the franchises would permit co-location.

Given the limitations posed by the economic realities of the franchises being unable to remain at the property and the franchise design elements needing to be removed, this court finds that a lower value would be applicable to the property at issue here. Taking the lowest of Geiger's range, or $104 per square foot and subtracting $10 per square foot for the removal of franchise elements, the property has a market value of $4,777,268.00 total, or $94 per square foot for the 50,822 square feet in question.

## Conclusion

Based on the evidence presented and the stipulation agreements, this court finds the fair market value for the property owned by Lehigh Street Properties, LLC, located at 3401 Lehigh Street, Salisbury Township, Allentown, Lehigh County, Pennsylvania, identified as Tax Parcel No. 549562544489 1, to be $4,777,268.00 for the 2013 and 2014 tax years.

## ORDER

And now, this 10th day of November, 2014, upon consideration of the November 14, 2012 petition by Lehigh Street Properties L.L.C. for appeal of the October 18, 2012 decision of the Board of Assessment Appeals of Lehigh County, having reviewed the briefs from petitioner and respondent and having heard argument thereon, the

court finds the following:

It is hereby ordered that the fair market value of the subject property for real estate tax purposes shall be $4,777,268.00 for the 2013 and 2014 tax years.